## Case No. 5,744.

### In re GREAVES.

[5 Law Rep. 25; 1 N. Y. Leg. Obs. 213.]

District Court, S. D. New York. April, 1842.

BANKRUPTCY—COSTS.

Petitioners for the benefit of the bankrupt law [of 1841 (5 Stat. 440)] are bound to dis-

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

charge all expenses incident to the prosecution of their application.

In this case the bankrupt [Alexander Greaves] presented an affidavit setting forth that he was poor and destitute of all means of support, or to pay the expenses of obtaining the benefit of the act, and that the general assignee had required an advance of ten dollars, previous to acting upon the decree of bankruptcy in this case. The affidavit stated further that he had no property or effects, and that none passed to the assignee by the decree. His counsel moved that the bankrupt be allowed to complete his proceedings, without any action of the assignee under the decree. The general assignee referred to the inventory of property filed by the bankrupt on presenting his petition, by which he represented his property to consist of one fifth of ten thousand acres of land in Kentucky, one half of one hundred acres in Essex county, N. Y., three lots of land in Pennsylvania, (unless sold for taxes), five shares in the Norfolk Granite Company, Quincy, N. Y., and also claims of debts amounting to seven or eight hundred dollars. The petition was sworn and filed March 1, 1842.

Mr. Edwards, for the bankrupt.

BETTS, District Judge. No provision is made by the bankrupt act enabling parties to conduct proceedings forma pauperis, and the act evidently contemplates that they shall discharge all expenses incident to the prosecution of their application. Indeed parties may well be regarded as bringing suits or actions to enforce in their own favor the provisions of the statute. This would properly characterize the proceedings in cases of involuntary bankruptcy, and there is no great incongruity or inaptness of expression in applying it to those of the voluntary bankrupt. He seeks to be declared exonerated from his debts by judgment of the court, and it would not be extraordinary or inequitable that he should provide for all expenses created in securing a decree so exclusively for his own benefit. These expenses except in case of opposition, could rarely exceed the costs in an ordinary collection suit. There are other considerations which will prevent granting the motion now made. It seeks to impose upon the court duties appropriate to the assignee. Upon the principle of this application, the court may be called upon in each case to withhold the matter from an assignee, by declaring there is no estate to collect or distribute, and that, therefore, the assignee need take no steps respecting it. This would abrogate a provision of the law, of great importance to creditors. The assignee stands as trustee in their behalf, stimulated by his personal interest, to search out and collect for their benefit every species of property belonging to the bankrupt; and most assuredly the court will be very cautious in interfering with this main protection to their interests provided by the law. Besides, the substitution of the court for the assignee would be inconvenient in the extreme, if the law allowed it to be done. The mere ex parte statements of the bankrupt would generally be all the evidence it could command, and instead of being aided by the vigilance and personal examination of an assignee, applied to the subject, questions respecting a bankrupt's estate and rights would have to be disposed of upon such representations as he might choose to lay before the court. The present case illustrates both the inconvenience of that method of proceeding and also the mischiefs that might result from it. The bankrupt, on presenting his petition, filed also a sworn inventory of property, which would seem to promise to yield something to his creditors. Possibly the expectation of benefit from the assignment may have induced them to acquiesce in a decree. After the decree is perfected, the bankrupt presents his affidavit, that the estate scheduled was not his property, but had been previously assigned or conveyed by him. and asks the court to take the decree out of the hands of the assignee and to give him the benefit of the act without having any investigation of his affairs or estate. The reason urged for so extraordinary an interposition is, that the assignee demands an advance sufficient to cover his expenses before he will act upon the decree; and this the bankrupt says, he is unable to furnish. If the demand of the assignee was shown to be unreasonable in amount, the court would take measures immediately to protect the party; but that some mode should be provided for indemnifying the officer in the execution of his duty, cannot be denied. The court might have required bonds of the bankrupts in all cases, to cover necessary charges; but it was thought more simple and more advantageous to them to leave them to arrange the manner of indemnification with the assignee. If any assets are realized, the expenses will ultimately fall on the estate, and if not, it is one of the charges the bankrupt must meet as necessarily incident to his proceeding. The court must be informed through the official report of the officer designated by the statute, that the bankrupt has delivered over his estate or furnished means by which it can be traced out, and called in before a decree of final discharge can properly pass. The assignee and his appropriate offices in this case, can no more be dispensed with, than any other branch or particular of the proceedings, directed by congress; and a bankrupt might with like propriety, because of his poverty or undeniable probity, solicit the court to decree him his discharge in the first instance, and dispense with every preliminary proceeding, as ask to be relieved from making an assignment and enabling the assignee to furnish the report to the court demanded by the rules.