GOODRICH v. PACKARD. See Case No. 5,546.

---

## Case No. 5,546.

### GOODRICH et al. v. REMINGTON.

### SAME v. PACKARD.

[6 Blatchf. 515.] [1]

Circuit Court, N. D. New York. July 14, 1869.

BANKS AND BANKING — BANKRUPTCY OF REAL QWNER OF INCORPORATED BANK — SUIT BY ASSIGNEE TO RECOVER ASSETS FROM BANK'S RECEIVER—COSTS.

1. M., a private banker under the general banking law of New York, not being allowed by law to establish another private bank, established a joint stock bank under that law, under an agreement that the stockholders other than himself were to have no real interest in the bank, and they had none, and the bank was carried on under that arrangement. M. failed in business, and the bank failed, and a receiver of the bank was appointed by a state court of New York. M. having been subsequently adjudged a bankrupt, his assignee in bankruptcy brought a suit in equity, in this court, against the receiver, to compel a delivery of the assets of the bank to the assignee, for distribution in bankruptcy, as assets of M.: Held, that the relief could not be granted, and that the bill must be dismissed.

2. As the question was one on which it was proper to ask the opinion of the court, and as the assignee, in filing the bill, acted under the advice of eminent counsel, no costs were allowed to the defendants.

In equity. The plaintiffs in these cases [Horace P. Goodrich and others] were the assignees in bankruptcy of Hiram J. Messen-

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

ger. The defendants [Emery B. Remington and Milton D. Packard] were, respectively, receivers, appointed by the supreme court of the state of New York, in separate proceedings, instituted against the Bank of Ontario, and against the Bank of Canton, severally and respectively, as insolvent banking associations, organized under the general banking law of the state of New York. The plaintiffs, by their bills, asked decrees from this court, declaring the property in the hands of such receivers, and claimed by them as property and assets of such insolvent banking associations, to be the property and assets of the bankrupt.

HALL, District Judge. The facts upon which the rights of the parties, in these suits, depend, are substantially the same in the two cases, and they may, therefore, be properly disposed of upon the same grounds.

The bankrupt, being already a private banker, under the general banking law, at Cortland, determined, some years since, to establish a bank at Canandaigua, and, at a subsequent period, determined to establish another bank at Canton; but he could not establish such banks as a private banker, under the general banking law, because he already had such private bank at Cortland. Therefore, for the purpose of establishing the bank at Canandaigua, he executed, in connection with William Richardson, Merrick Munger, John C. Draper, and James H. Tripp, a certificate of the organization of the Bank of Ontario, in due and proper form. The execution of this certificate was duly acknowledged, and it was then recorded in the clerk's office of Ontario county; and the other formal acts necessary to the organization of a banking association, as contemplated by such certificate of organization, were done, as•required by the general banking law of New York. By this certificate of organization and the subscriptions thereto, it appears, that the capital stock of the association was fixed at $100,000, and divided into one thousand shares of $100 each; and that, of these, the bankrupt subscribed for 920 shares, and the other four associates for 20 shares each.

The Bank of Canton was organized in the same way, the capital stock and number of shares being the same, and the associates being the bankrupt, who subscribed for 950 shares, and C. W. Heaton and Charles H. Stevens, who subscribed for the additional 50 shares, Heaton subscribing for 20 shares, and Stevens for 30 shares.

It is claimed, and may be considered as proved, that these banks were, in fact, established for the sole benefit of the bankrupt; that, as between him and the other associates, it was agreed that the other associates were not to be called upon to pay up their subscriptions, and were to have no real interest in the bank; that, in fact, they never paid any thing on such subscriptions; and that, from first to last, the bankrupt managed and controlled all the operations of these banks, without any interference from the other associates, without any board of directors, and, as between himself and the other persons who had signed the certificates of organization, in all respects, in substance, as though they had been his individual banking establishments. The required returns to the banking department of the state were, however, duly made, and the other forms of keeping up the organization and operations of these banks, as banking associations, as contradistinguished from a private banking establishment, were observed and maintained; and the transactions and business of such banks, with their depositors and dealers, were carried on in the name, form, and manner of similar transactions and business of actual legal banking associations, organized and carried on in good faith, and without fraud, either against the state, in its corporate character, or against its citizens, as individuals. Under these circumstances, the Bank of Ontario, either without ever having had a dollar of capital, or without having had any capital paid in that was not very soon thereafter withdrawn by the bankrupt, carried on business for several years, and its deposits, at one time, amounted to more than $340,000. The operations of the Bank of Canton were more limited, and its deposits were much less. The failure of the bankrupt, at his banking house in New York City, at once caused the failure of these two banks, and of his private bank at Cortland. At the time of these failures, the bankrupt was indebted to the Bank of Ontario, to an amount exceeding $160,000, and to the Bank of Canton, to an amount exceeding $29,000, in addition to his possible liability for the whole amount of stock subscribed by him in those banks respectively. It is probable that his assets were not then sufficient to pay more than 30 or 35 cents on the dollar of the claims of his general creditors.

The plaintiffs, as assignees in bankruptcy, insist, that the acts of the bankrupt and his associates, in perfecting a formal organization of the Banks of Ontario and Canton, as banking associations, and in carrying them on as such for years, for his individual profit, making verified, but false, returns to the banking department, in the forms of those required by law to be made by banking associations, and holding out these banks to the public as banking associations duly organized, and recognized by the laws of the state as corporations having a legal existence, with legal franchises, corporate property, and clearly defined rights and liabilities, entirely separate and distinct from the individual existence, property, rights, and liabilities of the bankrupt, was a gross fraud on the banking department and the state, as well as against those dealing with the banks; that these banks were, and, in respect to this controversy, must be regarded as the banks of the bankrupt, as a private banker; that

the assets and property of these banks, now in the hands of their receivers, must be decreed to belong to the plaintiffs, as assignees in bankruptcy; and that the depositors in and creditors of these banks must come in and share pro rata with all the other general creditors of the bankrupt. This is resisted by the receivers, who insist that the assets in their hands belong to them, as such receivers, and must be disposed of by them, for the benefit of the creditors of such banks, as required by the statutes of the state under which such receivers were appointed. No proceedings, under the bankrupt law of the United States, to obtain an adjudication of bankruptcy, have been taken by or against the Bank of Ontario, or the Bank of Canton, as banking associations.

The making, recording, and filing of the certificates of the organization of the Bank of Ontario, and of the Bank of Canton, and the acts of user under them, must, under the laws of this state, and the decisions of our state courts, be held to be sufficient to establish the existence of these banks, as corporations, as against the associates and third persons, whatever might be the right of the state, by a direct proceeding, by quo warranto, founded upon the frauds alleged, to put an end to their corporate existence. Act April 18, 1838, §§ 15–18 (Sess. Laws N. Y. 1838, c. 260); Buffalo & A. Val. R. Co. v. Carey, 26 N. Y. 75; Eaton v. Aspinwall, 19 N. Y. 119; Dayton v. Borst, 7 Bosw. 115, affirmed 31 N. Y. 435; Palmer v. Lawrence, 3 Sandf. 161, affirmed 5 N. Y. 389; Leonardsville Bank v. Willard, 25 N. Y. 574; Robinson v. Bank of Attica, 21 N. Y. 406; Stover v. Flack, 30 N. Y. 64. Whatever might be the rights of the creditors of these banks, as against the bankrupt, in consequence of the fraud practiced by the bankrupt, there is no ground of equity upon which the assignees of the bankrupt, (either as his representatives, or as the representatives of his general creditors,) can reach the assets of these banks now in the hands of their receivers.

It was urged by the plaintiffs, that the object of the bankruptcy act [of 1867 (14 Stat. 517)] is, to secure an equal, or, rather, pro rata, distribution of all the property of the bankrupt, to and among all his creditors; but the act itself (section 36) recognizes a different rule, as respects the joint and individual property, and joint and individual debts, of members of a copartnership; and, if there were no legal corporations in existence, and the associates who signed the certificates of organization before referred to were simply copartners, and liable as such, their copartnership property would be distributed among their copartnership creditors, to the exclusion of the separate creditors of an individual member of the copartnership. In short, it is believed that there is no ground upon which the plaintiffs can maintain either a legal or an equitable title to the property sought to be reached by these suits. The fraud imputed to the bankrupt should not give his general creditors any right to the deposits in these banks, as against the persons who made such deposits upon the faith of the legal existence of the corporations, and of their right to look to the assets and property of the corporation as their security; and it would seem to be inequitable and unjust to enforce the claim made by the assignees in this case.

The view taken of the actual legal and equitable rights of the parties renders it unnecessary to inquire whether the bills in these cases should not be dismissed upon the ground that the rights insisted upon by the plaintiffs, if any such rights exist, are legal rights, in respect to which they have an entirely adequate remedy at law. Nor has it been deemed necessary to discuss the question, whether the laws under which the receivers were appointed are insolvent laws, and, therefore, superseded by the bankruptcy act; for, the plaintiffs, in order to succeed in these suits, must show title in themselves to the property in controversy. The receivers, being in possession of the property, are entitled to hold it until it is claimed under a paramount title.

As the decision is against the alleged right of the plaintiffs to the subjects of controversy, it is, also, unnecessary to consider the question raised by the defendants, in regard to the right of the state courts to decide the questions of property involved, by reason of their having, as it was insisted, obtained jurisdiction, and placed the property in controversy in the possession of their receivers, by proceedings commenced anterior to the commencement of the proceedings in bankruptcy under which the plaintiffs claim.

Upon the whole case, the plaintiffs' bills must be dismissed; but, as the question presented was one upon which it was proper to ask the opinion of the court, and as the assignees, in filing their bills, acted under the advice of eminent counsel, the bills must be dismissed without costs.