### In re BARRETT.

### JORDAN v. BRIDGES et al.

(District Court, W. D. Tennessee. April 16, 1904.)

1. BANKRUPTCY—SUITS BY RECEIVER—INJUNCTION AND COST BONDS.
   The requiring of cost or injunction bonds in suits in the Circuit or District Courts by trustees or receivers in bankruptcy relating to the administration of the estate is not governed by state statutes or rules of the court applicable to ordinary suits at law or in equity, but is a matter resting in the discretion of the court, to be exercised in view of the facts in each case.

2. SAME.
   A court of bankruptcy, or a court of equity administering relief in behalf of a trustee or receiver in bankruptcy, at least when the bankruptcy proceedings are within the same jurisdiction, will not require him to give security for costs nor to be personally liable for the same, unless it shall be made to appear that he is acting in bad faith or unreasonably and oppressively in bringing the suit, certainly not where it appears that there are assets of the estate out of which the costs may be paid, and not even where there is no showing of assets, except under circumstances that make it equitable and fair to the adversary party that the creditors interested should be required to indemnify him against the costs by giving security.

In Equity. Suit by receiver in bankruptcy. On motion by defendants for cost and injunction bond.

H. D. Minor, for the motion.

T. M. Scruggs, opposed.

HAMMOND, J. The plaintiff is the receiver in bankruptcy to whom the voluntary bankrupt surrendered his property and effects, as required by standing rule No. 1 of this court (109 Fed. iii, iv). He filed this independent bill on the equity side of the docket against the defendants,

alleging that they were scheduled by the bankrupt as creditors for large sums due them out of transactions which are attacked as invalid and fraudulent, because the indebtedness arose out of dealings in futures, called by the bill "gambling debts." For this alleged indebtedness the several defendants are charged with holding certain property, including rent notes, life insurance policies, diamonds, and other property of very large value, as collateral security, and it is charged that they will dispose of the same by sale or otherwise before the trustee is appointed, unless restrained by the process of this court. The court granted a restraining order, according to the prayer of the bill, and afterwards, upon notice, a preliminary injunction forbidding the disposition of the collateral property until the trustee should be appointed and until the further orders of the court. The defendants made no resistance to the injunction at the time of the application, but entered a special appearance only to move that the plaintiff be required to give the usual cost bonds and an injunction bond in a sufficient amount to protect the defendants against any damages for the wrongful suing out of the injunction, which motion is resisted by the plaintiff upon the ground that he should not be required to give such bonds for the conduct of this litigation.

It is conceded by counsel on both sides that the giving of the injunction bond is a matter within the discretion of the court, and not governed by any statutory or other prescribed rules; but it is insisted by the defendants that the ordinary practice of this court, and of all equity courts, is to require a bond to protect defendants against damages for the wrongful suing out of an injunction, and that it is the common practice in Tennessee to fix the amount of the bond and require it at the time the injunction is granted, it being done usually in the fiat for the injunction. The plaintiff contends, however, that, while this may be true in ordinary practice, the better practice is that the court will not determine the question of whether there should be an injunction bond, nor its amount or character, except as one of the conditions upon which the injunction will be granted when the defendant appears to answer the application for restraining process, and that it is not until the defendant answers, or in some other way makes a showing of his relation to the parties and his relation to the property involved, that the court can determine in the exercise of its lawful discretion whether there should be an injunction bond, or what its terms should be. He also contends that in a practice like the federal practice, where the injunction is not granted ex parte, but upon notice, it is one of the purposes of this notice to give the defendant an opportunity to indicate what terms should be imposed upon the plaintiff in the granting of the injunction; and the further contention is that, if the defendant submits to an injunction without a denial of the allegations of the bill or a showing otherwise against its equities, the court in the exercise of its discretion is justified in assuming that the allegations of the bill are true, and that the defendant will receive no injury by the process, for the reason that there is no indication that it will be wrongful, and therefore the court will not require a bond under such circumstances.

I do not take the time in this case to look into the adjudicated cases which indicate the considerations that govern the discretion of the court

in requiring or pretermitting the giving of an injunction bond, for the reason that from the allegations of this bill it does not appear that any injury can come to the creditors, except such as may come to them by reason of delay in realizing on their securities and the satisfaction of their debts, which ordinarily would be covered by interest allowances for the mere delay. But in all insolvency and bankruptcy proceedings the general rule is that the creditors have no rightful interest for the delay arising out of proceedings for insolvency or bankruptcy. That delay is one that is incident to the contingencies arising between debtor and creditor, and it is supposed that they contract with each other in view of the fact that such delays may occur if the debtor becomes bankrupt.

The bill also indicates upon its face that this property is composed of life insurance policies not matured, and about which there is no indication of conditions that would make it necessary to have a speedy settlement with the insurance company. If such conditions exist, it is incumbent on the defendants to show it. The rent notes involved are not due until next December, and there will be ample opportunity for the trustee, when appointed, to deal with the question between him and these creditors as to what the best interests of the bankrupt's estate require before there can be any necessity for speedy action in relation to these notes. If there be any conditions of threatened insolvency of the makers of the notes, it would be incumbent, also, upon the defendant to make such a showing on this application as would control the discretion of the court. As to the large quantity of diamonds mentioned in the bill, the only chance for injury would be deterioration in value, which is not likely, so that it appears, from the record as it now stands, that there is no indication of impending danger to the defendants by the granting of this injunction. Therefore it occurs to me that the contention of the plaintiff's counsel is well taken that, in the absence of some showing by the defendants upon this motion, they are not in an attitude to insist upon a mere technical requirement that a preliminary bond shall be given to protect them.

But there is another important consideration, which is also involved in the application for a cost bond, that presumably would influence the discretion of a court in requiring or pretermitting an injunction bond, and that is the fact that this plaintiff is in a certain sense an official receiver, who has no personal interest or advantage to be gained, and who is acting solely in behalf of the creditors of the estate and for the protection of its assets. It is an important inquiry whether such a plaintiff should be required to give either injunction or cost bonds, except under extraordinary circumstances. Again, attention may be called to the fact that all men, in their dealings with each other out of which the relation of debtor and creditor arises, must be presumed to contract with reference to the exigencies and contingencies that may subsequently arise by the insolvency of the debtor or the creditor, and particularly of the debtor, and still more particularly that relation to such conditions as will arise if insolvency proceedings are commenced in the courts for the winding up of the insolvent estate, as in case of the death of the debtor in the process of the administration in insolvency

of his estate, or when, in the case of corporations or partnerships, there is a winding up of such concerns in courts appointed for the purpose. When there is existing a congressional provision for a bankruptcy system under the Constitution of the United States, the fact that the debtor or creditor may become a bankrupt and be subjected to all the exigencies and conditions of that status, presumably must have been in the contemplation of the parties at the time they made their contract; and therefore whatever inconveniences or possible losses may arise out of such unfortunate results are not to be alleged as giving any particular equities in the determination of such a matter as we have now before us. It may well be assumed that debtors and creditors will understand that if bankruptcy occurs, and they become involved in litigation about the bankruptcy affairs, the official receivers and trustees will be allowed to conduct such litigation without personal responsibility for costs or damages, and without the burden of being required to give security for the same, whereby in many cases it may be imagined the litigation could not proceed at all because of the inability or unwillingness of such quasi officials of the court to pay costs and damages, or give security for such liability. There is certainly no equity possessed by defendants in such litigation to escape judgments against them by reason of such inability of the quasi officials' conduct of administration in bankruptcy or insolvency. If there be any principle at the bottom of such a contention as that with which we are now dealing, it seems to me this should exercise the controlling influence, and the court would not require security for costs and damages, except in plain cases of a just demand by the defendants for such protection. On authority the question seems to be somewhat obscure, at least to the somewhat hasty examination which has been given to it by counsel, owing to the pressure for quick decision in this matter.

There is no act of Congress requiring either cost or injunction bonds in any ordinary litigation, and certainly none in the litigation arising out of bankruptcy proceedings. It seems a little remarkable that the bankruptcy statute has neglected this subject, more particularly because exercising the plenary power given by the Constitution of the United States to establish a uniform system of bankruptcy, Congress might have provided a rule upon this subject which would have been binding upon all courts, state and federal, in all jurisdictions, as well outside jurisdictions as those within which the bankruptcy proceedings are carried on. If a bankruptcy trustee or receiver should go into another court, state or federal, where the statutes or rules of practice required all plaintiffs to give bonds, or other security for costs and damages, how would such agents of the administration in bankruptcy be able to provide the required security? They might report the fact to the bankruptcy court, and the court might require the parties interested in the litigation to furnish the security or indemnity for it, or if the court had in its possession assets available for the purpose, it might appropriate such assets to such indemnity; but in the absence of such means as this, the court would be powerless to furnish the indemnity to the agents conducting the litigation, and valuable causes of action might perish, or the recovery of valuable property might be hopeless, because such

security could not be given; whereas, if the act of Congress had provided that the receivers and trustees in bankruptcy might proceed in all courts without security for costs or damages, except where it appeared that the litigation was frivolous or ill-advised, the recovery of bankruptcy assets would have been better attained. My understanding is that the English practice governing all courts have such a provision by rule of court. Obviously, it will require an act of Congress to effectuate such a result under our form of government. Williams' Bankruptcy, 419.

It seems to be true, as contended by the learned counsel here, that the general rule of equity is that the unsuccessful party will be required to pay costs, whether he is suing in right of another or in his own right, and the practice is to so decree the costs, the unsuccessful trustee or other fiduciary being reimbursed under some circumstances out of the estate for which he sues, or in whose behalf he is sued, if defendant. Mr. Daniel mentions only two exceptions to this rule. One is where a provision of an assignee or an insolvent is made a defendant to a suit to foreclose a mortgage, and the other in a case of official guardian ad litem for infants. 3 Dan. Ch. Pr. (1st Ed.) 7. But the only result of this principle would be that the receiver in this case would be personally liable for the costs incurred by this litigation, if not protected by some statute or rule of the court against it, where it is possible to make a rule of the court effective.

But giving security for such a liability is quite another matter; and it is conceded by the defendants' counsel that the general rule of the English chancery practice is that no security for costs is required, except in cases where the plaintiff resides abroad; and this is our federal rule of practice, since there is no statute requiring any security for costs, at least in cases of equity; nor do the equity rules of the Supreme Court of the United States require any security to be given for costs upon the filing of a bill. 1 Foster's Fed. Pr. (3d Ed.) p. 755, § 338. It is not necessary to decide that point, but it may be that our Practice Conformity Act of June 1, 1872, c. 255, 17 Stat. 197 (Rev. St. § 914, 1 U. S. Comp. St. 1901, p. 684), binds us to the Tennessee statutes and practice requiring bonds for costs to be given in actions at law, but by the very terms of the statute it does not apply to causes in equity or admiralty, and, I should think, not to causes in bankruptcy. The Tennessee statutes and rules of equity require cost bonds in all equity cases, as they do in all law cases, and it has been the practice in this court ever since its establishment, both at law and in equity, to give bonds for costs, both before and after the practice conformity act above referred to. It is an illustration of the fact that almost unconsciously we assimilate the federal practice, both in law and equity, to that of the state practice, with which the judges and lawyers are so familiar, and it is believed that this is so in quite all the states of the Union. My predecessor in these courts, immediately after the close of the Civil War, when the courts were first opened, prescribed quite an elaborate list of rules of practice for the Circuit Courts of the United States, acting under the authority of the court to make its own rules of practice in matters that are not regulated by statute or by the general rules of the Supreme Court of the United States. Rule 15 directs:

"In all cases before suit is instituted, the plaintiff shall give security in the clerk's office for all costs that may accrue, which security shall be approved by the clerk."

This rule undoubtedly requires bonds for costs to be given in all equity cases, and it is the practice here, without exception, to require such security; so that, if the literalism of this rule is to be followed, the plaintiff in this case should have given, and should now be required to give, a bond for costs in the ordinary form. Evidently the learned judge, in making this rule, was dominated by the state law upon the subject, with which he was familiar, being an expert practitioner before he came upon the bench; but he did not undertake to regulate the practice which pertains to the well-recognized exceptions to the rule of liability for costs on the part of those who are acting in an official or quasi official capacity, to which reference has already been made; and I doubt if that rule should be applied in its literalism to deprive a court of equity of its discretion in such matters, at least so far as that discretion relates to governing the question of costs and security for costs in any particular litigation before the court itself. At all events, at the time this rule was prescribed we had no bankruptcy statute, and it was not made in relation to bankruptcy proceedings and bankruptcy litigation. It is true that very soon afterwards the late bankruptcy statute of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517) was passed. I am not advised as to the practice under that act during the administration of my predecessor in this matter of requiring security for costs on the part of the official administrators of the bankruptcy estates; but I feel quite sure that it is open to us now, notwithstanding the literalism of this rule, to say that it should not be imperatively controlling in bankruptcy litigation under the act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]). The case of Hazleton Boiler Co. v. Citizens' Railway Co. (C. C.) 72 Fed. 325, 330, cited by counsel, was not a case in bankruptcy, or relating to bankruptcy affairs, and while it may have some bearing in equity cases, I am not disposed to treat it as a precedent in a matter of bankruptcy litigation.

There is a more conclusive answer to the contention for the binding effect of this rule to be found in the fact that it is not a rule of the District Court at all, but a rule prescribed for the Circuit Court of the United States for the districts in Tennessee, as courts of law and equity. It must be admitted, however, that while the rule is not strictly a rule of this court, it has been the practice to follow it as such, or, rather, I should say that there has grown up, without any specific rule in the practice of the District Court, the invariable custom of requiring a bond for costs in all cases without exception, just as the practice is under the rule in the Circuit Court. This custom should have all the force and effect of a specific rule, undoubtedly, and we would not be authorized to make any exception, unless it was justified by the principles of law that govern the discretion of the court in requiring bonds or other security for costs, or in making exceptions that exonerate parties from that obligation as a preliminary condition to being allowed to bring other suits.

The case of Henning v. Western Union Tel. Co. (C. C.) 40 Fed. 658, was a case of removal from the state court in an action at law; and

while the state law required no security for costs from a resident of South Carolina, a rule almost identical with the above quoted rule 15 of our court did require such security, and it was there held that when the case was removed, especially after an amendment in the federal court to the declaration of the plaintiff, the requirements of the federal rule became imperative.

The case of Platt v. Adriance (C. C.) 90 Fed. 772, was a case by the receiver of a national bank, who claimed exemption under Rev. St. § 1001 [U. S. Comp. St. 1901, p. 713], from giving security for costs, and it was held that that section did not apply, by its proper construction, unless it should be made to appear that the costs were to be paid out of the contingent fund of the Treasury Department available for that purpose under the statute. The case shows that a statutory receiver of a national bank should not be exonerated from the ordinary rule of security for costs, when the suit is not brought under the direction of a department of the United States, as required by the last above cited section of the Revised Statutes; and counsel for the defendants here contends that it is a ruling against the idea of any special favors being shown an official receiver in regard to this matter. But in reply to this it may be said that, Congress having passed a statute upon the subject of security for costs by receivers of national banks, the statute afforded all the privileges that could be granted, and unless the receiver could bring himself within the statute he could claim no such exemption.

It is convenient here to notice another argument of defendants' counsel, that Bankr. Act July 1, 1898, c. 541, § 25c, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432], having enacted that "trustees shall not be required to give bond when they take appeals or sue out writs of error," on the principle of statutory construction that the expression of one thing is the exclusion of another (2 Bouv. Dic. 126; Broom's Leg. Max. 592), inferentially requires security in all other cases, except cases of appeal. This is plausible enough, but the plain answer to it is that, Rev. St. § 1000 [U. S. Comp. St. 1901, p. 712], having required that in all cases of appeal or writ of error there shall be taken a sufficient security for damages and costs, it required this special enactment of section 25 of the bankruptcy statute to relieve trustees in bankruptcy from the obligations of that statute, while it did not require any such statutory enactment to relieve them from any obligation to give security in courts of original cognizance; and presumably Congress intended to leave the matter of security in the latter courts just where the general law had left it; that is to say, subject to the authority of those courts to require security, or to exonerate parties from giving it, according to the general law of the subject, or the special rules made by them to govern the practice under the authority of law. Wherefore this section 25c of the bankruptcy statute does not aid us any in the determination of the question we have in hand.

So it may be said in relation to another suggestion arising out of section 69 of the bankruptcy statute (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]), requiring bonds from either the petitioning creditors or the bankrupt, in cases of the seizure of property, where the proceedings in bankruptcy are involuntary, that while such provision of the statute indicates a purpose on the part of Congress

to protect litigants against costs and damages in involuntary cases, it is not necessarily to be implied that Congress intended to apply this principle to cases of litigation by receivers and trustees in cases of voluntary bankruptcy, but rather the implication would be the other way upon the above-cited maxim of the expression of one thing being the exclusion of another. The truth is that the bankruptcy statute does not legislate fully upon the subject of costs and damages, and where there is no specific regulation we must rely upon the general law in regard to it.

Precisely the same observations may be made about the provision of Bankr. Act July 1, 1898, c. 541, § 3c, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], namely, that it is a provision definitely designed for cases of involuntary bankruptcy, and has no application to voluntary cases. Neither is there in section 64b of that act, somewhat enlarged by the amendment in Act Feb. 5, 1903, c. 487, § 14, 32 Stat. 800 [Supp. 1903 U. S. Comp. St. p. 416], any guidance on this question of giving security for costs; for, although that section applies to both voluntary and involuntary cases, if it has any bearing here, it is in its authority to the court for extending priority of payment to the actual and necessary costs of preserving the estate subsequent to filing the petition; but it makes no provision for security for costs. Also it may be remarked that General Order No. 34 (32 C. C. A. xxxiii, 89 Fed. xiii) is confined in its terms to involuntary bankruptcy, and contested adjudications.

As before remarked in this opinion, there is no doubt that in all the federal courts the almost irresistible tendency is, in the absence of specific regulation, to follow the equity practice of the state courts quite as fully as the conformity act requires us to follow the state practice in actions at law, and Judge Townsend has held, in the case of Deuprez v. Thomson Elec. Co. (C. C.) 66 Fed. 22, that it is proper to govern the discretion of the federal court by the practice in the state court; but obviously this is not sufficient to override the requirement of equity rule 90 that in all cases where there are no rules of our own practice we follow the chancery practice in England, as it existed in 1842, at the time of the adoption of those rules, to which practice also we are bound by General Order in Bankruptcy No. 37 (32 C. C. A. xxxvi, 89 Fed. xiv) directing that we shall follow the equity practice of the Circuit Court in this regard. As was well remarked by Judge Putnam, in the case of Primrose v. Fenno (C. C.) 113 Fed. 375, 376, that while our Rev. St. § 914 [U. S. Comp. St. 1901, p. 684], requires us in actions at law to conform as near as may be to the state practice, and matters of cost fall within that rule, and we follow the local practice, except so far as it has been modified by statute or the special usages of the federal court, "we are not required to hold ourselves so far bound by it as to embarrass us in doing justice between the parties," and in each particular case these considerations cannot be overlooked. This qualification applies itself more readily to the custom of following the state practice in matters of equity than in matters of law, where we are required to follow it by statute "as near as may be."

I think it may be safely affirmed that the general rule in England and in this country is that receivers appointed by the courts and trustees in bankruptcy ordinarily are exonerated, at least in courts within their own

jurisdiction, from either personal liability for costs or any requirement that they shall give security for the same. 17 Enc. Pl. & Pr. 846. This exoneration is sometimes accomplished by statute, and sometimes depends upon the general law or rules of practice in the particular court. I have not been advised, and do not take the time to inquire, what the rule upon this subject is in the Tennessee practice; but I take it that the discretion of the chancellor in such matters has not been entirely taken away, and certainly both the Circuit Courts and the District Courts of the United States have ample power to make such rules of practice in a matter like this as are not contrary to some act of Congress or some rule of the Supreme Court making specific regulations.

The Code of Tennessee is very imperative, and makes no exception in this requirement that every litigant commencing proceedings shall give cost bond. Code Tenn. 1858, § 3187 (Shannon's Code, § 4923 et seq.); Code Tenn. 1858, §§ 2818, 3192 (Shannon's Code, §§ 4523, 4928). Administrators and guardians are required to comply with these statutes by numerous cases, which will be found cited in 1 Webb's Dig. 1001. But parties entitled to a fund in the clerk and master's office are not required by the statutes to give a bond upon filing their petitions in litigation concerning it. Ex parte Yowell, 7 Heisk. 561. This case proceeds upon the ground that the petition is not an original suit commenced in the court, but an incidental proceeding. In the case of De Graffenreid v. Green, 1 Cold. 109, 114, the principle that trustees are to be exonerated from personal liability for the costs of a bill filed by them to preserve the estate pending litigation was applied in the adjudication, and the costs were charged upon the funds of the estate. There was no question made about giving security for the costs, but at least it may be suggested that, where there is no personal liability on the part of the litigant for the costs, he ought not to be required to give security for the same, though that case does not go so far as to rule upon that question.

The case of Jones v. Kearns, Mart. & Y. 242, decided in 1827, is a very full exposition of the doctrine prevailing at common law and in equity practice in England concerning the giving of security for costs by the plaintiff in the action, and it is shown, as all the English authorities show, that in the mother country no security was required, unless the plaintiff resided out of England, when the requirement was quite imperative that he should give such security. But the Supreme Court of Tennessee, under the then existing act of 1787, now Code Tenn. 1858, § 3187, supra, held that after the bond required by that act had once been given there could be no motion for further and additional security, even where the sureties became insolvent, and an earnest judicial protest was made against the injustice and oppression of allowing such a motion to prevail; the court in that day being no doubt influenced by the rule, prevailing in the mother country then and now, that the resident subject or citizen should not be under any circumstances required to give security for costs, but that the parties should be left to their process of attachment and contempt for a failure to pay costs adjudged against them, unless they took advantage of the relief statutes under the insolvent debtors act. But this protest of the Supreme Court did not seem to prevail in the Legislature; for in 1829 an act was

passed, now Code Tenn. 1858, § 3191, supra, definitely allowing at any stage of the cause a motion for additional security for costs, all of which shows that the rule in Tennessee is quite as strict as it is anywhere that security for costs shall be given by the litigants. Still, I do not find anywhere any decision which deprives a court of equity of its ordinary discretion in such matters, and I doubt if it would be held that the statutes are so imperative that a court of equity might not exonerate its own receivers and trustees, or official agents, from giving security, at least in their own court, for costs, particularly if there be a fund in court out of which the costs might be paid. However this may be, as I have already endeavored to show, the federal courts are not bound, at least in courts of equity, by such state statutes, but we are required to follow by the rules already cited the practice in England as it existed in 1842, at the time of the adoption of our equity rules.

I have made some examination of the adjudications under the former acts of bankruptcy, and find there is a case of Hall v. Waterbury, 19 N. B. R. 15, 5 Abb. N. C. 356, which is not available to me for examination because the books in which it is reported are not accessible, decided by one of the state courts in New York about the time of the repeal of the bankruptcy statute. It is digested, however, in Brandenberg's By. Dig. 113, and in 10 U. S. Dig. (N. S.) 65, as follows:

"An assignee in bankruptcy will not be required to furnish security for costs in an action brought by him, on the ground that he has removed from the state since the action was brought."

This decision was made in a state which seems to have a statute similar to the English practice requiring nonresidents of the state to give security for costs. 17 Ency. Pl. & Pr. 846. In the case, however, of Forman v. Campbell, 9 Ben. 472, Fed. Cas. No. 4,939, it was decided by Judge Benedict in New York, in 1878, that where an assignee in bankruptcy was prosecuting an expensive litigation and had no funds in the estate to answer costs, he could be ruled by the court to give security for the costs; the ground of the decision being that it was the duty of the creditors in behalf of whom the litigation was carried on to furnish the necessary security. The court held that it was the inherent power of every court, independently of any statute, to compel the parties to give security for costs. In the case of Lansing v. Manton, in 1876, 14 N. B. R. 127, Fed. Cas. No. 8,077, Judge Wallace considered that a receiver like ours here could not maintain a suit to set aside a fraudulent conveyance in his own name, which could only be brought by the assignee in bankruptcy, or in the name of some one else, upon the ground of a want of title either to the property or the right of action in the receiver; and he held that, where the receiver could be directed to bring the suit in the name of another, the court appointing him and giving the direction would indemnify that other against costs by requiring the necessary security to be furnished by those interested in the estate.

I do not see that the case of Re Oregon Iron Works, 4 Sawy. 169, Fed. Cas. No. 10,562, has any bearing upon the question of costs to which it is cited in one of the digests; but it does contain a point worth noting in relation to this case, which is that in a proceeding in

equity in a bankruptcy court in relation to the bankruptcy estate it is not required that the procedure shall be as plenary and formal as in a regular equity proceeding, but nevertheless it is substantially an equity case, and governed by the ordinary rule, which indicates that a bankruptcy court, in the administration of its equity powers for the purposes of bankruptcy, has some enlarged discretion in relation to that character of litigation. In the case of Coxe v. Hale, Fed. Cas. No. 3,310, filed by an assignee in bankruptcy to set aside a fraudulent conveyance, there seems to have been no question as to giving security for the costs; but the court held, notwithstanding the bill was dismissed, that the circumstances were not such as to raise an imputation upon the good faith of the assignees in prosecuting the suit, and therefore they were exonerated from any personal liability, and were allowed to pay the costs out of the funds of the estate. In Goodrich v. Remington, 6 Blatchf. 515, Fed. Cas. No. 5,546, the suit of an assignee in bankruptcy was dismissed; but because he acted in good faith in filing the bill, and upon the advice of eminent counsel, the court refused to tax the assignee with any costs, and inferentially the defendants were left without any judgment for their costs, as it does not appear that there were any funds in the estate out of which they could have been paid. The point decided was that the assignee was not personally liable for the costs, if he acts in good faith.

On the other hand, in Re Brinkman, 6 N. B. R. 541, Fed. Cas. No. 1,883, the assignee was charged personally with the costs of his dismissed petition, because it was not filed at the time it ought to have been, and it was intimated that he might be also chargeable personally with expenses that he had incurred ill-advisedly, and required to refund them to the estate. So it seems that the question of the good faith and good sense of the assignee are controlling considerations with the court in determining whether he shall be personally liable for costs in bankruptcy litigation, or shall be exonerated therefrom by the circumstances of the particular case. Again, in Re Preston, 6 N. B. R. 545, Fed. Cas. No. 11,394, the assignee was charged personally with the costs, because his petition and litigation were improper, and not advisedly taken. Yet again, in Collins v. Gray, 8 Blatchf. 483, Fed. Cas. No. 3,013, the bill of an assignee in bankruptcy was dismissed, but under the circumstances of the case the court remarks that it would seem to make it reasonable that the assignee filed the bill, and therefore it was dismissed, without costs to either party.

In re Greaves, 5 Law Rep. 25, Fed. Cas. No. 5,744, under the act of 1841, was an application by the bankrupt to be exonerated from the payment of costs, because of his poverty, although his schedule showed that he had assets, if assignments he had made could be vacated; and the court held that, inasmuch as the assignee was rquired to look into the bankruptcy affairs and he could not reasonably expect to have the benefit of the act without such scrutiny and investigation, he could not fairly ask to be relieved from the payment of the necessary costs of the proceeding, as if suing in forma pauperis, for which no provision was made in the act of 1841. The case shows that the bankruptcy court looks to the assets or to the indemnity against the costs of administration by those who are beneficially interested, rather than personally to

the assignee, receiver, or trustee; and I have no doubt this is the general rule that controls the discretion of the bankruptcy judge in such matters, and that, in the absence of bad faith and unreasonable litigation, such official agents of the court are not personally liable for costs, and therefore should not be required to furnish security for the same.

The disfavor with which these motions are regarded in a court of bankruptcy is shown by the rule laid down by Hilliard that a motion for security must be made at the time when the party making the motion is first permitted to come in, when the assignee in bankruptcy is asked to give security for costs. Hill. Bky. 391, § 24. This rule, I think, frequently appears in the practice as shown by the English cases. Under our present act, Judge McPherson decided, in Re Baird (D. C.) 112 Fed. 960, that while a trustee in bankruptcy is not required to litigate every question demanded by creditors, yet he could not throw the risk of the controversy upon a particular creditor making the request by requiring of him indemnity for security against costs and expenses. And that learned judge took occasion to remark that in such matters it was difficult to lay down any general rule of practice for the guidance of officials in the bankruptcy court, just as we would find it here difficult to prescribe any general rule upon this subject to meet the exigencies of particular cases, but that if the trustee would remember that he is the representative of the estate considered as a whole, and is bound to be vigilant and attentive in advancing its interests, and under obligation to carry out in the strictest good faith the provisions of the bankruptcy statute where they seem to apply to the estate committed to his charge, he could not go far wrong in doing or refusing to do that which creditors demanded, and in doubtful cases might apply to the creditors at their meetings and to the court for his guidance. So that we have in this doctrine, so well put in that case, a general principle that in the administration of the bankruptcy statute each case depends upon its own circumstances, upon the sound business conduct of the trustee, and the intelligently regulated discretion of the court, in such a way that it would be impossible almost to fix upon any hard and fast rule to govern the question of giving security for costs. But all the cases show that the discretion of the court is certainly not to be controlled by any mere influence of a general practice or a general rule governing litigation in other courts than those of bankruptcy, which are sui generis, and must be controlled by considerations peculiar to them and the business for which they were created. I have not found any case in our American courts that in the least tends to show that the useful discretion of the court in each particular case should be hampered by any fixed rule upon this subject.

An examination of the English practice of giving security for costs shows that in all courts, with some differences, perhaps, in the considerations that control the discretion, the rule was, and, as I understand, it yet is, quite inflexible that no subject resident in England should be required to give security for costs; the remedy there being to secure the costs by a proceeding by attachment for contempt where there was a personal liability to pay the costs. This was so entirely a matter of residence that even a foreigner, and even when that foreigner was a prisoner of war, if he was actually resident in England, gave no secu-

rity for costs. On the other hand, if he actually resided out of England, and even in Scotland or Ireland or Wales, he must give security for costs, if demand were made upon him by the adversary party in due time. Many of the cases to this effect are cited by Mr. Justice McKinney in the case of Jones v. Kearns, Mart. & Y. 242, supra. The application of the rule in the courts of equity will be found set forth in Beam on Costs, 89, 132, 146, 178, 186, 329, and in 2 Dan. Ch. Pr. (1st Ed.) 33 et seq., 58, 766, 862. See, also, Ebrard v. Gassier (1884) 28 Ch. D. 232.

I find in these authorities no indication of any exception requiring receivers, trustees, executors and the like residing in England to give security for costs, but the cases generally seem to deal with the questions of the liability or nonliability of such fiduciary agents personally for costs and expenses of litigation conducted by them in their fiduciary capacity; and, as stated above, in relation to the American cases, the general rule seems to be that, if they act in good faith and with sound discretion, they will not be personally liable, but otherwise they may. And again I say that, if they be not personally liable for the costs, there seems to be ordinarily no reason to require them to give security for the same, if they have in their hands assets out of which the court may satisfy the costs in proper cases. But, if the estate or fiduciary agents be destitute of any means to pay the costs, then questions may arise as to whether those who have been officially interested in the litigation shall be required to indemnify the adversaries against costs and damages. But, as indicated in some of the American cases above cited, it may turn out that the circumstances are such that even in the latter class of case the court will permit the litigation without any costs allowed to the adversary from such fiduciary agents. All showing that this question of costs, and giving security for costs, is in the English practice and the general equity practice, and bankruptcy practice, as will be found later, a matter of sound discretion in the court in each particular case, according to its circumstances; and the wisdom of making any hard and fast rule, by statute or otherwise, may be doubtful.

I have not closely examined the cases cited in the text-books above referred to, for the purpose of determining whether there be in the English practice any exception in favor of executors, trustees, or assignees in bankruptcy residing abroad or administering trusts and estates in a foreign jurisdiction, but having occasion to bring suits in England, as to the rule that all suitors residing abroad may be compelled to give security for costs; but I am inclined to think that there is no exception as such in their favor in that regard, and that they are required to give costs as other foreign residents are. It is, however, to be noted that certainly, as to that class of suitors residing in England, the discretion of the court in requiring security for the costs, or refusing to direct it, is controlled by other considerations than that of residence, or, at most, the residence or nonresidence is only one factor in determining the question along with others; but whether the almost absolute rule that nonresidents must give security when demanded is at all relaxed in favor of foreign fiduciary agents bringing suit in England, under the influence of the same considerations as would exonerate them if residing there, also I am not prepared to say. Nor is it necessary to

make, on this occasion, such an investigation, because we are not now concerned with nonresident plaintiffs in any capacity, and that subject is only useful here in elucidating the principles that should govern us in deciding when an assignee in bankruptcy is required to give security for costs, or a temporary receiver occupying substantially the same relation.

Coming to the particulars of the English practice in bankruptcy, as distinguished from courts of other jurisdictions, it will be found that the existing act, and I think those going before, either in the acts themselves or by the orders and rules of practice under them, have declared that "the costs of and incidental to any proceeding under this act shall be in the discretion of the court," with some specific regulations not needful to be noted here. Obviously, however, this is a mere statutory declaration of a discretion that exists and must exist in all courts, whether the statute specifically grants it or not. Williams' Bky. 321, 322. But under that act very elaborate regulations for governing the administration in bankruptcy in the matter of costs have been prescribed, and it seems regrettable that our own bankruptcy rules have not been equally as explicit for the uniform guidance of the courts; for it is quite intolerable that each bankruptcy court shall make for itself a system that may be altogether at variance with rules made in other districts. Certainly I am not disposed, in the absence of any uniform directions by the Supreme Court, to undertake to establish a system of procedure as to costs in bankruptcy, but prefer to rely upon the sound principles of law governing such matters as prescribed by adjudicated cases. Wms.' By. rule 108 (3), p. 419; rule 114, p. 421; rule 125, p. 424; rule 231, p. 449; rule 171, p. 437; rule 176, p. 438; rule 339, p. 474. See, also, Id. pp. 269, 290, 294, 295, 419, 449, 596; Beam's Costs, 329.

These rules and regulations, under the English bankruptcy acts, are very instructive, and embody, no doubt, the soundest judgment of the English courts upon the points, and may be taken as an authoritative declaration of what is in England considered the sound principles which should govern the principles of bankruptcy courts in the matter of costs. One of the rules directs that where an action is brought against an official receiver or trustee, or where an official receiver or trustee is made a party upon application of another, he shall not be personally liable for costs. Wms.' Bky. 419. Another provides that, when assets are to be distributed, the actual expenses incurred by the receiver in protecting the property of the debtor, or any part thereof, shall be first paid, taking priority over all other claims whatever (Id. 424), which rule has followed in the general directions for the taxation of costs (Id. 596). Another rule prescribes, in commencing involuntary bankruptcy, that there shall be a deposit by those conducting the proceeding, to cover the official expenses of an ad interim receiver in taking care of the property. Id. 437. And these costs paid by the creditor by another rule are charged, when proper to be done, to be paid out of the estate. Id. 438. An official receiver is not to be personally liable for costs. Id. 419, 449. And wherever acting in good faith in the bringing of suits or incurring of expenses, and governed by a reasonable belief that he is acting in pursuance of the statute, his costs and expenses are ordered

to be paid out of the estate. Id. 474. Nor is a trustee in bankruptcy personally liable for costs. Id. 419. And he will not be required to give security for the costs. Id. 269, 290, 294, 295, 419.

Turning to a few of the adjudicated cases upon this subject, we have a flood of light in the reasoning of the judges. Before taking up those which we shall cite, it may be remarked that an examination of the larger number of cases referred to by Williams in the places cited from his work will show that there has been much conflict of judicial opinion in England upon this subject, and some diversity of adjudication, if the examination comprehends cases governing the whole class of fiduciary agents bringing suits in behalf of the estates they administer; but it is believed that the principle of exonerating such trustees from giving securities for costs has been more favorably endured in the case of assignees in bankruptcy than the others. In the leading case of Denston v. Ashton, L. R. 4 Q. B. 590, it was decided definitely, after a struggle over the question in the Court of Queen's Bench, that the court would not require an assignee in bankruptcy, who sues for the benefit of the estate, to give security for costs, although he was in insolvent circumstances. It seems to be a general rule that an insolvent would be required to give security for costs upon the ground that the beneficiary for whom he was suing should provide the indemnity against his insolvency; but the court ruled that that general rule did not apply to an assignee in bankruptcy, because, while he was suing for the benefit of those who were interested in the estate, he was not a merely nominal plaintiff suing for the benefit of a third person, like a plaintiff, for example, suing for the use of another in an action at law, but that he was in the performance of a duty to collect and care for the assets. The court declared that it had been "unable to find any authority in favor of enforcing security for costs in such a case." The court referred to a previous case of Sykes v. Sykes, L. R. 4 C. P. 645, which was the case of an executor suing for an injury to the estate, and there was an application by the defendant for security for costs on the ground that one of the plaintiff executors resided in Scotland and out of the jurisdiction of the court, and the other had become bankrupt and was unable to pay the costs. The court at first ordered the security to be given, but upon a rule to show cause that order was rescinded, upon the distinct ground that an executor sat upon the same footing as an assignee in bankruptcy in regard to the duty of collecting the assets of the estate, and it was held that the circumstance that one of them resided out of the jurisdiction and that the other was bankrupt was no ground for requiring security for the costs. That case, also, is very instructive in the opinion of the judges, which discuss at large the whole subject of requiring plaintiffs to give security for costs, and the circumstances under which the courts will demand it. The court said that executors and assignees in bankruptcy do not lend their names to a third person as those do who, under the general rule, are required to give security for costs when they are insolvent, but that they were the real plaintiffs in the action, although suing in a fiduciary capacity. No more instructive case upon this subject can be found anywhere, and upon this authority the case of Denston v. Ashton, supra, was decided. This latter case was questioned as to its soundness in the case

of Porley's Trustee in Bankruptcy v. Whetham (1884) 28 Ch. D. 38, by one of the judges; but he said that he was not required to either overrule or affirm it, and, while he saw no reason to dissent from it, he had not properly considered the question, and wished to express no opinion upon it. The other judges also referred to Denston v. Ashton, supra, and Sykes v. Sykes, supra, and stated that they did not know whether they should agree with those cases or not, and altogether all the judges left a serious doubt as to the soundness of those cases, to say the least of it. But notwithstanding this it was decided in that case that the fact that the plaintiff was suing alone in his official name as trustee, and not at all in his personal name, was not a ground sufficient to require him to give security for costs, the evidence there offered of his insolvency being insufficient; and it was made a query whether, if the proof had shown insolvency, he would have been required to give security for the costs, and it was upon this point that so much doubt was thrown upon the two cases above referred to. But in Cowel v. Taylor (1886) 31 Ch. D. 34, the doubt as to the soundness of Denston v. Ashton, supra, was removed by the same judges who raised the doubt, and the case was approved, and has become fully established as sound in its doctrine that the court will not require security for cost to be given by a plaintiff who sues as a trustee in bankruptcy, even where he is in insolvent circumstances. This case was in the Court of Appeals, and has finally settled the question in the English practice.

All these cases are not only instructive but convincing on the subject. They have greatly strengthened my own judgment that, notwithstanding any seemingly imperative statutory or other rules requiring all parties to give security for costs, those statutes and those rules are made in view of the fact that these exceptions in favor of those suing in a fiduciary capacity are fully left to the discretion of the court to determine in each case upon its particular circumstances. Whether a fiduciary agent conducting litigation in the administration of estates committed to their trust shall be required to give security for costs is always a matter to be determined, not by the general rule alone and according to its strictness in its broadest and most comprehensive terms, but by the general principles established so long ago in relation to the exceptions to such a rule. It does not always follow that, because the Legislature has not noticed the exceptions, it intends to override them; but we need not go into the technicalities of that subject, because here we have no act of the Legislature requiring us to demand security from any plaintiff; nor have we any rule of court requiring it, as we have endeavored to show. Wherefore we are not embarrassed by that question. This rule of practice is of such general application in jurisprudence that I doubt if any court should require an assignee in bankruptcy, coming from another jurisdiction even, to give security for cost and injunction bonds; but it is not necessary to decide that point.

The result is that a court of bankruptcy, or a court of equity administering relief in behalf of a trustee or receiver in bankruptcy, at least when the bankruptcy proceedings are within the same jurisdiction, will not require him to give security for costs, nor to be personally liable for the same, unless it shall be made to appear that he is acting in bad faith, or unreasonably and oppressively, in bringing the suit; certainly

not where it does appear that he has, or that the court has within its control, assets out of which the costs may be paid; and even where there is no showing of assets out of which to pay the costs, he will not be required to secure them or be personally liable for them, except under circumstances that make it equitable and fair to the adversary party that the creditors interested in the estate should be required to indemnify them against the costs by giving security, all of which will be determined in each case, according to its own merits and circumstances. And, so far as the injunction bond is involved in this motion, it is governed by the same principles precisely, only, as it is conceded, the court has more freedom of discretion as to that than in the matter of costs.

Motion overruled.