### ODELL v. H. BATTERMAN CO.

#### (District Court, E. D. New York. October 10, 1914.)

1. RECEIVERS (§ 174*)—CORPORATIONS—ADMINISTRATION OF PROPERTY—RIGHT TO SUE—CONSENT.

Where a business corporation occupying rented premises was in the hands of receivers appointed by a federal court, and the landlord desired to terminate the lease because of an alleged breach of a condition to perform an order of the fire department of the city of New York to make certain changes in the premises, as it was required to do by the laws, the landlord's application to sue in the state court in ejectment while the receivers were in possession would be denied, except that it might be permitted to sue the corporation alone, with a stipulation that the receivers might intervene and stay the action during the period of their possession.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 333–343; Dec. Dig. § 174.*]

---

2. Courts (§ 500*)—Jurisdiction—Federal Courts—Receivers.

    Where property of a tenant corporation was in the hands of receivers appointed by the federal court, such court had jurisdiction to hear and determine a question as to the landlord's right of entry for alleged breach of a condition in the lease.

    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1407, 1408; Dec. Dig. § 500.*]

In Equity. Suit by William P. Odell against the H. Batterman Company. On application by the Barwin Realty Company for leave to institute an action of ejectment. Denied conditionally.

Henry A. Ingraham, of Brooklyn, N. Y. (William D. Guthrie, of New York City, of counsel), for petitioner.

Corbitt & Stern, of New York City (Ernest J. Ellenwood, of New York City, of counsel), for receivers.

White & Case, of New York City (P. H. Noyes, of New York City, of counsel), for noteholders' committee of H. B. Claflin Co.

CHATFIELD, District Judge. Receivers in equity of the H. Batterman Company were appointed by this court upon the 25th day of June, 1914. They are occupying premises leased by the H. Batterman Company in 1909 for a 30-year term from the Barwin Realty Company.

Performance of the conditions of this lease was guaranteed by one of the individuals connected with the Batterman corporation, but under existing circumstances this guaranty gives assurance for the future of no more security than will be present in the value and business of the Batterman Company itself.

On March 14, 1914, two orders of the fire department of New York were issued, directing the making of certain changes in the Batterman store. This order was addressed to the estate of Henry L. Batterman, owner, etc., and served upon the executor, who happened to be president of the Barwin Realty Company. This notice was sent by him to the tenant, who was bound by the terms of the lease to carry out any "orders" of the city departments "applicable to the premises," with privilege of re-entry by the owner in case of breach thereof.

Rent was paid up to and including June 10, 1914, and accepted by the landlord, which had no actual knowledge, and did not inquire, as to whether the directed changes had been made. The rent for July and the succeeding months has been tendered and refused by the landlord, who on July 13th sent a notice to the Batterman Company and the receivers of its election to terminate the lease because of the neglect of the aforesaid order, and demanded surrender of the premises. The landlord now makes its motion for leave of this court to bring an action for ejectment against the Batterman Company and the receivers in the courts of New York state.

Since the pendency of the motion, the order of March 14th has been rescinded, and another order made directing the same changes, but addressed to the *receivers* and to the *Barwin Realty Company.* Under

the terms of the lease, these changes will now have to be made by the receivers, if the validity of the order is accepted by the tenant and the owner, or upheld by the courts, although the receivers will probably occupy the premises but a short time, even if liquidation occurs.

[1] It is urged that this will not result, and that the property will be, under some form of reorganization, turned back to the Batterman Company, or a successor thereto. So long as the receivers remain in possession, the rent reserved in the lease will be available for the landlord (as it is admittedly a fair value for use and occupation), and even if the landlord be allowed to exercise the right to bring suit, the receivers must continue to occupy the premises while conducting business under present circumstances. But it is apparent that the desire of the landlord to determine his security as to the future term of the lease and his right to insist upon a new contract, or a new guarantor for the contract of leasing, is a substantial matter, which the court is loth to consider upon a motion having to do only with the receivers' present status. Whether the lease was broken by failure to obey an order of the fire department, which the department apparently recognizes might be successfully contested, should not be determined collaterally upon the face of the present papers, on an application for leave to raise the question by suit.

But this does not dispose of the legal right claimed by the landlord on July 13, 1914, to terminate the lease, and the only question before this court is whether the landlord should be allowed to *now* institute a suit to test the question of its demanded right to eject the tenant and the receivers. If the receivership is to be continued for any time, and particularly if the receivers are compelled under the new order of the fire department to make the repairs ordered, then the right of the landlord to *present* possession of the property must still be litigated in these equity proceedings, for the receivership and the liability of the receivers to pay for occupation of the property will not be terminated by a decision as to the rights of the tenant under the lease which the receivers are now complying with in the tenant's place and stead. After the receivership is ended, or any adjustment is arranged, so that the property is to be turned back to the tenant, then the state court would be the only forum to litigate the question of the rights of the tenant and the landlord.

The conclusion from the whole matter is that the landlord, if he has a right to insist upon a new lease, or new terms of the lease, should not be precluded from the immediate benefit of asserting those rights by a mere forcible stay incidental to the presence of the receivers. But neither should the landlord's claim of rights (merely because the court cannot dispose of it upon a statement of the question) be allowed to interfere with the receivership by litigation which promises to extend far beyond the limit of the receivership, and to be entirely a matter for the consideration of those seeking to take the property from the hands of the receivers and enter into relations with the landlord, freed from the jurisdiction of this court. It is evident that, if liquidation occurs and the lease be terminated or given up, the present question is of no importance. If the receivers seek to sell the

lease as an asset, they will have to dispose of the question before so doing. But neither of these considerations affect the present motion.

For these reasons, the application to begin an action in the state court at the present time will be denied, unless, as indicated upon the argument, the landlord wishes a limited permission to begin such an action against the tenant alone, to preserve its alleged rights, and with the stipulation that the receivers may intervene and temporarily stay the action, during the period that they may be in possession.

[2] On the other hand, the landlord may, upon the present papers, or such other papers as he may be advised, apply to this court (as the court having present jurisdiction over the entire property) for a determination as to the landlord's right of entry (subject to the actual occupation by the receivers), and that issue, if raised, may be properly disposed of upon the answering affidavits after a full hearing.