ODELL v. H. BATTERMAN CO.

In re BARWIN REALTY CO.

(Circuit Court of Appeals, Second Circuit. March 9, 1915.)

No. 174.

1. APPEAL AND ERROR ☞78—APPEALABLE ORDER—"FINAL ORDER"—DENY-
ING LEAVE TO SUE RECEIVER.

An order, in receivership proceedings against a tenant, denying a land-
lord leave to sue the receiver in ejectment for the possession of the prem-
ises on account of breach of covenant by the tenant before the receiver
was appointed, and permitting application in the receivership proceedings
only subject to the possession of the receiver, is a final order which is
appealable, since a "final order" is one which determines a substantial
right against a party in such a manner as leaves him no adequate relief
except by appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 426,
434, 464–477, 480, 481; Dec. Dig. ☞78.

For other definitions, see Words and Phrases, First and Second Series,
Final Order.]

2. RECEIVERS ☞71—POSSESSION OF PROPERTY—LEASEHOLD.

A receiver, appointed to take charge of property of a tenant, cannot
maintain possession of the leasehold against the landlord, where the ten-
ant had breached the lease, so that the landlord was entitled to declare a
forfeiture thereof.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 127, 128; Dec.
Dig. ☞71.]

3. RECEIVERS ☞176—ACTIONS—LEAVE TO SUE.

Where a court of competent jurisdiction has taken possession of prop-
erty through a receiver appointed by it, no other court can acquire juris-
diction over the same property, or render any judgment which interferes
with the possession, unless the court shall grant leave to sue its receiver;
but the court appointing the receiver has ancillary jurisdiction to deter-
mine all questions relative to the possession of such property, even if it
would have no original jurisdiction of those questions.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 345; Dec. Dig.
☞176.]

4. RECEIVERS ☞174—ACTIONS—LEAVE TO SUE—DISCRETION.

It is an abuse of the discretion of the court appointing a receiver for a
tenant to refuse permission to the landlord to sue in another court, or to
apply to the court appointing the receiver, to recover possession of the
property from the receiver for the tenant's breach of the lease, which en-
titles the landlord to forfeit it.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 333–343; Dec.
Dig. ☞174.]

5. APPEAL AND ERROR ☞843—QUESTIONS PRESENTED FOR REVIEW—DENIAL
OF LEAVE TO SUE RECEIVER—DEFENSES TO ACTION.

On appeal from an order denying to a landlord leave to sue a receiver
of a tenant for possession of the property, because of the tenant's breach
of the provisions of the lease, the defenses of the tenant to the action for
possession will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3331–
3341; Dec. Dig. ☞843.]

Appeal from the District Court of the United States for the Eastern
District of New York.

This cause comes here on appeal from an order entered in the District Court of the United States for the Eastern District of New York on October 26, 1914.

For opinion below, see 217 Fed. 305.

The complainant is a citizen of the state of New Jersey and a resident of the city of Newark, and is a creditor of the defendant corporation, and upon his application receivers of the property of defendant were appointed. The defendant is a corporation organized and existing under and by virtue of the laws of the state of New York, and is a citizen of said state. The Barwin Realty Company is also a corporation organized and existing under and by virtue of the laws of the state of New York, and is a citizen of said state.

William D. Guthrie, of New York City, and Henry A. Ingraham, of Brooklyn, N. Y., for appellant.

Richard Welling, of New York City, for appellee H. Batterman Co.

Corbitt & Stern, of New York City (Arthur F. Gotthold and Ernest J. Ellenwood, both of New York City, of counsel), for appellees receivers.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. In 1894 the defendant corporation was organized for the purpose of conducting a general department store. It had an authorized capital stock of $250,000, all of which it issued. On July 11, 1909, it entered into a lease with the Barwin Realty Company, hereinafter designated as landlord, while the defendant corporation is hereinafter referred to as tenant. Under the terms of the lease the landlord agreed to let and the tenant agreed to hire the premises in the borough of Brooklyn, Kings county, city and state of New York, at Broadway, Graham, and Flushing avenues, since occupied by the tenant as a store, together with the store fixtures and furnishings. The lease was to run for a term of 21 years, which term was to commence on July 11, 1909, and end on July 11, 1930, at 12 o'clock noon of that day, unless sooner terminated in accordance with its terms. The rent to be paid was $70,000 a year, and in addition the tenant was to make all repairs and pay all taxes and ordinary assessments levied against the property during the continuance of the lease, as well as all water rents and water charges. It was also to keep the property insured, $750,000 on the buildings and $100,000 on the fixtures. The tenth covenant of the tenant is as follows:

"To comply at the expense of the tenant with all rules, orders, ordinances, and regulations of each and every department or bureau of the city, county, state, or national government applicable to the said premises and of the New York Board of Fire Underwriters."

The lease also states that it is specifically understood and agreed between the landlord and tenant that:

"(4) If the tenant shall make default in fulfilling any of the covenants and conditions of this lease, or in making any payments herein provided, or in case the tenant abandons the premises and the same shall become vacant, the landlord may re-enter said premises and remove all persons therefrom, either by any suitable action or proceeding at law or by force or otherwise, without being liable to indictment, prosecution or damages therefor; and in any such case the landlord may give to the tenant five days' notice of its election to end the term under this lease, and thereupon the term under this lease shall ex-

pire, and all right of occupation thereunder on the part of the tenant shall end, and the tenant will quit and surrender the said premises to the landlord, and at the option of the landlord it may relet the premises as the agent of the landlord and receive the rents therefor, applying the same first to the payment of such expenses as it may be put to and then to the payment of the rent and other payments which may be or become due according to the terms of the lease, and the balance, if any, at the expiration of the term of this lease shall be paid over to the tenant."

On March 4, 1914, the fire department of the city of New York issued an order, known as order No. 15,688F, requiring the defendant within 60 days after the service thereof to provide inclosures of fire-retarding material around stairways and additional stairway and hallway in fireproof inclosure. It also issued another order, known as order No. 15,689F, requiring defendant within 10 days from date of service thereof to provide certain fireproof doors, automatic fireproof doors, fireproof inclosures, fireproof covers, and fireproof receptacles with respect to the premises so leased as aforesaid. But the defendant, it is alleged, failed and neglected to comply with the orders, although they were duly served upon it.

The defendant became financially embarrassed having outstanding obligations to the amount of several hundreds of thousands of dollars and being further indebted in large sums for merchandise. Receivers were accordingly appointed under an order made on June 25, 1914, and under the terms of that order all persons were enjoined from commencing any action against the defendant or its receivers. The landlord accordingly applied to the court for permission to commence an action of ejectment in the Supreme Court of the state of New York against the tenant and the receivers, claiming that, inasmuch as the changes directed to be made by the fire department had not been complied with, the lease was subject to forfeiture according to its terms, and the landlord was entitled to recover possession of the premises, having already given the notice required by the lease that it elected to end the term of the lease and demanded that possession of the demised premises be surrendered. While the application for leave to sue was pending the receivers proceeded to complete the work necessary to comply with the order No. 15,689F. But order No. 15,688F still remained unfulfilled. This application for permission to sue in ejectment was denied, unless—

"the landlord wishes a limited permission to begin such action against the tenant alone, to preserve its alleged rights and with the stipulation that the receivers may intervene and temporarily stay the action, during the period that they may be in possession."

It was added, however, that the landlord might apply to the court below as having present jurisdiction over the entire property—

"for a determination as to the landlord's right of entry (subject to the actual occupation of the receivers) and that issue, if raised, may be properly disposed of upon the answering affidavits after a full hearing."

This amounted to a refusal to allow an action of ejectment to be brought in the courts of the state of New York. An action in the New York courts against the tenant alone would fail as the receivers are in

actual possession of the property, and the New York Code of Civil Procedure (section 1502) provides that:

"Where the complaint demands judgment for the immediate possession of the property, if the property is actually occupied, the occupant thereof must be made defendant in the action."

But even if the receivers were not a necessary party the permission to proceed without them was valueless as the receivers had the right under the authority conferred to intervene and stay the action. And as to the permission to apply to the court below we observe that any determination of the question in that court was to be "subject to the actual occupation by the receivers." The action of the court evidently proceeded upon the theory that the right of the receivers in the premises is superior to the right of the tenant as well as superior to any right of re-entry the landlord may have for the tenant's default.

[1] This makes it necessary to inquire whether the order which the court made denying the request to be permitted to sue the receivers in ejectment is a final order from which an appeal may be taken. If we conclude that it is, we shall then be obliged to inquire whether error was committed in refusing to grant permission to sue. Chief Justice Taney, more than 60 years ago, pointed out in Forgay v. Conrad, 6 How. 201, 205, 12 L. Ed. 404 (1848), that practice in the chancery courts of the United States differed from the practice of the chancery courts in England, in that it was possible to take an appeal to the House of Lords from an interlocutory order of the Chancellor in some cases, while in the courts of the United States the right to appeal was by law limited to final decrees. The authorities concerning the distinction between interlocutory and final decrees were cited and reviewed in an opinion of the Supreme Court of the United States in Keystone v. Martin (1889) 132 U. S. 91, 93, 10 Sup. Ct. 32, 33 L. Ed. 275. The subject was again fully reviewed in McGourkey v. Toledo & Ohio C. R. Co., 146 U. S. 536, 13 Sup. Ct. 170, 36 L. Ed. 1079 (1892), and by Chief Justice White in La Bourgogne, 210 U. S. 95, 112, 28 Sup. Ct. 664, 52 L. Ed. 973 (1908). And see Matter of Farmers' Loan & Trust Company, 129 U. S. 206, 213, 214, 9 Sup. Ct. 265, 32 L. Ed. 656 (1889); Clark v. Roller, 199 U. S. 541, 546, 26 Sup. Ct. 141, 50 L. Ed. 300 (1905); Ex parte National Enameling Company, 201 U. S. 156, 26 Sup. Ct. 404, 50 L. Ed. 707 (1906); Foster's Fed. Practice, vol. 1, § 255.

The rule announced in these cases for determining whether, for purposes of appeal, a decree is final, is whether the decree disposes of the entire controversy between the parties. Under the decisions an adjudication is a final appealable order if it involves a determination of a substantial right against a party in such a manner as leaves him no adequate relief except by recourse to an appeal. In the suit at bar appellant claims a legal right to immediate possession of the premises, and asserts that he is entitled to have that right determined with all reasonable speed. So much of the order appealed from as denied appellant's application was undoubtedly a final order, inasmuch as it definitely and conclusively determined the proceeding which appellant had instituted. The effect of the order as we have pointed out is to leave appellant without relief until the receivership is terminated.

When that will be cannot be predicted. The receivership is a consent receivership and capable of indefinite duration.

In Gay v. Hudson River Electric Power Company, 184 Fed. 689, 106 C. C. A. 643 (1911), this court decided that it was error for the court below to deny a mortgagee the right to have the mortgaged property immediately sold, which right was given by the terms of the mortgage, merely because the property was in the custody of the court in receivership proceedings and such a sale might work an injury to other creditors. It was argued, too, in that case, that the denial of the motion for leave to sell the property did not result in a final order, because, after the receivership had terminated, the appellant would be free to take steps to protect its rights. It was also argued that the order was discretionary, and therefore not appealable, inasmuch as it was a proper exercise of discretion to deny the mortgage creditor relief when the mortgaged property was so bound up with the rest of the estate in court as to make it desirable to sell all the property of the insolvent as a unit, since such a sale would realize a larger fund for creditors. We held the order made by the court denying the mortgagee the right to have the property immediately sold was an appealable order. "We have no doubt," we said, "that the order is appealable." So in the recent case of Central Trust Co. v. Chicago, Rock Island & Pacific R. Co., 218 Fed. 336, 134 C. C. A. 144, we held that an order denying the petitioner leave to intervene was a final and appealable order, because it was apparent that under the circumstances the denial of leave to intervene impaired the petitioner's substantial rights.

[2] A trustee in bankruptcy is bound by all forfeiture clauses, and the bankruptcy court gives effect to them. Remington on Bankruptcy (2d Ed., 1915) vol. 2, p. 985. Thus in Lindeke v. Associates Realty Co., 146 Fed. 630, 77 C. C. A. 56 (1906) the Circuit Court of Appeals in the Eighth Circuit, in a case in which a corporation tenant for a long term had failed to perform a covenant of the lease which required it to build an expensive building on the leased premises, held, after the corporation had been adjudged a bankrupt, that on petition of the lessor the court of bankruptcy properly decreed the enforcement of the forfeiture and directed the trustee to surrender possession of the property as the only effective remedy for the protection of the rights of the lessor.

A trustee in bankruptcy gets the title of the bankrupt, and a chancery receiver, as we pointed out in Durand & Co. v. Howard & Co., 216 Fed. 585, 591, 132 C. C. A. 589 (1914), takes no title, but simply the possession as an officer of the court. It does not, however follow that the receiver can retain possession as receiver of A.'s property when it appears that A.'s right in the property is gone and that B. is entitled thereto. There can be no reason why B. is not entitled to show that A. has lost his right to the possession of the property, and that he (B.) is entitled to enjoy it. In other words, a chancery receiver can have no better right to retain possession of a leasehold than a trustee in bankruptcy has. The landlord's right to enforce a forfeiture of the lease is not less when a chancery receiver is in possession than it is when a trustee in bankruptcy has possession.

In this case the alleged breach of the lease occurred more than seven weeks before the appointment of the receivers. The landlord's right to end the tenancy was therefore complete, if the allegations are supported by the facts, before the receivers came into possession of the property. The receivers have no greater rights in the property than the insolvent corporation itself possessed. The appointment of the receivers in no wise abrogated the contract. And if under the lease after breach the landlord is entitled upon giving proper notice to the immediate possession of the property as against the tenant he certainly must have the same right as against the receivers. Receivers are not appointed to keep persons out of their rights. The law does not tolerate so rank an injustice. In Eyton v. Denbigh, etc., R. Co., L. R. 6 Eq. 14, 16 (1868), the plaintiff had conveyed land to a railway company in consideration of a rent charge. The company passed into the hands of a receiver, and Lord Romilly, Master of the Rolls, in permitting the owner of the rent charge to distrain for arrears of rent, said:

"I am clearly of opinion that I must give the applicant leave to distrain. * * * *The receiver was not appointed for the purpose of keeping persons out of their rights*, and in making this order I express no opinion as to the legal rights of the applicant, but simply remove out of his way the difficulty of the officer of the court being in possession. It is exactly the same case as if a stranger to the suit was applying for leave to bring ejectment."

And in Park v. New York, L. E. & W. R. Co. (C. C.) 57 Fed. 799, 802 (1893), Judge Lacombe said:

"The right to insist upon the execution of this contract according to its terms * * * is in no way impaired by the fact that the court has taken possession of all the property * * * and has placed its officers, the receivers, as custodians and caretakers, not only to preserve the same, but also to maintain it as a going concern pending the final adjustment. Every piece of such property comes to the receivers' hands in the same condition in which it leaves the hands of the defendant. No lien or contract is disturbed or altered by the court's intervention; and, if the receivers continue to hold a particular piece of property which they found in the possession of the Erie road, and which that road could only continue to hold upon complying with certain conditions, they must, if they so hold it, in like manner conform to these conditions."

[3] Where a court of competent jurisdiction, whether federal or state, takes property into its possession through a receiver appointed by it, the property is thereby withdrawn from the jurisdiction of all other courts. As said by the Supreme Court of the United States in Murphy v. John Hofman Co., 211 U. S. 562, 569, 29 Sup. Ct. 154, 156, 53 L. Ed. 327 (1909):

"The court, having possession of the property, has an ancillary jurisdiction to hear and determine all questions respecting the title, possession, or control of the property. In the courts of the United States this ancillary jurisdiction may be exercised, though it is not authorized by any statute. The jurisdiction in such cases arises out of the possession of the property, and is exclusive of the jurisdiction of all other courts, although otherwise the controversy would be cognizable in them."

All other courts than the one which has the property in its possession are without power to render any judgment which invades or disturbs the possession of the property while it is in the custody of the court

which has seized it. And in Wabash Railroad Co. v. Adelbert College, 208 U. S. 38, 54, 28 Sup. Ct. 182, 52 L. Ed. 379 (1908), the Supreme Court declared that for the purpose of avoiding injustice which otherwise might result, a court during the continuance of its possession has, as incident thereto and as ancillary to the suit in which the possession was acquired, jurisdiction to hear and determine all questions respecting the title, the possession, or control of the property. The court added that in the courts of the United States this incidental and ancillary jurisdiction exists, although in the subordinate suit there is no jurisdiction arising out of diversity of citizenship or the nature of the controversy. The principles to which attention has just been called are of general application, and serve to prevent a conflict over the possession of property which would be unseemly and subversive of justice. They have been applied by the Supreme Court of the United States impartially, sometimes in favor of the jurisdiction of the courts of the states, and sometimes in favor of the jurisdiction of the courts of the United States.

So long, therefore, as the premises in controversy continue in the possession of the receivers appointed by the court below, the jurisdiction of that court as concerns the property is exclusive of the courts of the state of New York. Because of its possession of this property through its receivers the court below has ancillary jurisdiction to determine whether the landlord has a right to forfeit the lease, whether there has been a default which justifies the forfeiture, and, if so, authority to direct the receivers to surrender the property. The court, in the exercise of its supervisory control of the receivers, may order them to relinquish possession to the landlord, if its title is incontestably clear as against the receivers. 34 Cyc. 422; Palys v. Jewett, 32 N. J. Eq. 302.

But the landlord is not asking the District Court to pass upon these matters. On the contrary, it invokes permission of the court to bring the suit in a court of the state of New York. If the suit is to be brought in the state court, it must be with permission of the court whose officers the receivers are, and permission must be granted in the cause in which the receivers were appointed. The appellant's right must be worked out, either in the action in which the receivers were appointed, or in an independent action brought only upon leave of the court by which the appointments were made. See Porter v. Kingman, 126 Mass. 141. It was therefore within the discretion of the court below to decide whether it would determine for itself the right which the appellant asserts against the premises which the court has taken into its possession, or would allow the question to be litigated elsewhere. Porter v. Sabin, 149 U. S. 473, 479, 13 Sup. Ct. 1008, 37 L. Ed. 815 (1893); Durand & Co. v. Howard & Co., supra. The law is correctly stated in 34 Cyc. 419, as follows:

"It was not according to the course of the Court of Chancery to refuse liberty to try a right claimed against its receiver, unless it was perfectly clear that there was no foundation for the claim, and while it has been held that the court cannot properly refuse leave to bring an action at law upon a purely legal right, when the applicant comes in asking for a trial at law and by jury, it is otherwise when the petitioner voluntarily comes into court in the

receivership proceeding, asking that court to determine his rights; and generally it is considered to be a matter within the discretion of such court whether it will determine for itself all claims of or against the receiver, or will allow them to be litigated elsewhere, and the latter is usually done when the issues can be more conveniently tried in the place where the facts arise and the venue belongs."

[4] As we have pointed out in an earlier part of this opinion, the order made by the court below was in effect a refusal to allow the landlord to have his claim adjudicated. The terms of the order clearly indicate that the court below has no intention to allow the receivers to be disturbed in their possession of the property. We think this an abuse of the court's discretion. The landlord has a right, which the court cannot properly disregard, to have its claim to the possession of this property passed upon and determined, and, if found to be valid, it has a right to be restored to the immediate possession of the property. That right the court must recognize and protect, notwithstanding the existence of the receivers and the creditors.

[5] The receivers claim that there is no cause of forfeiture, as it was the duty of the appellant, rather than of the defendant, to make the structural changes which the fire department ordered to be made, and that, if the receivers are mistaken in this, the defendant nevertheless was not under obligations to comply with the orders as the appellant had not demanded that defendant comply, and had not given its written consent to the making of the required structural alterations. The landlord answers that where a lease is for a long term, and provides that the tenant shall make repairs of every description, it includes repairs structural in character, and that by demanding that the orders be complied with it consented thereto. The receivers also assert that the landlord waived his right to terminate the lease by accepting rent after defendant's default. The landlord states he received the rent without notice that the orders had not been complied with, although defendant had promised to comply, and that as soon as the receivers were appointed he made an investigation into the condition of the property, and discovered that order No. 15,688F had not been complied with in any respect and that order No. 15,689F had only been partially complied with; that thereupon he immediately refused to receive any further payments of rent and gave notice terminating the lease. The receivers also assert that the orders of the fire department were void, not having been properly addressed and served. But the landlord asserted it received the orders and at once forwarded them to its tenant, with a demand for compliance, and that the tenant received them and immediately promised to obey them; that the orders described the demised premises with the utmost clearness and definiteness, and unmistakably referred and applied to the premises occupied by the defendant under its lease; that all the parties had actual notice of the orders, acquiesced in them, and acted under them, and are estopped from challenging their regularity.

But this court is not concerned with the foregoing defenses. It is not for us here and now to determine whether upon the facts the landlord is or is not entitled to judgment of ouster and to be put into possession of the property. It is enough for the present purpose to know that ap-

pellant has stated a good prima facie cause of action, and that no suffi-
·cient reason exists for denying it the right to sue the receivers as well
as the defendant in an action of ejectment.

The order appealed from is reversed. The petition for leave to com-
mence and prosecute an action in the Supreme Court of the state of
New York is granted, as prayed.