## ROBERTSON v. LANGDON.
### No. 5140.

Circuit Court of Appeals, Seventh Circuit.
June 26, 1934.

Ira J. Covey and George W. Hunt, both of Peoria, Ill., for appellant.

Henry Adamson, Russell Blair, and James H. Adamson, all of Terre Haute, Ind., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

Appellant, the trustee in bankruptcy of the Illinois Nurseries, Incorporated, an Illinois corporation, brought a bill in equity for relief from the forfeiture of a lease on certain farm property located in Indiana, owned by appellee, a resident of Indiana, and leased to the bankrupt. The lease in question was executed August 1, 1927, for a term expiring January 1, 1936, and provided for the payment of $150 a year rent, payable in advance on January 1 of each year, and all taxes due during the term. It also provided that, if at any time the rent became due and remained unpaid for a period of thirty days, the lessor might at his option enter upon the property and take possession of it and declare the lease forfeited, without notice or demand for possession. The property subject to the lease was a ten-acre tract intended to be used by the lessee for the raising of peonies for commercial purposes.

Immediately upon the execution of the lease, the lessee entered possession of the property and began planting the acreage in peonies, so that by January 1, 1933, approximately five acres were thus cultivated. The rent which became due on that date was not paid, and on January 4, the lessor sent the lessee a letter requesting immediate payment. Receiving no response to this request, on January 18, he again wrote asking for immediate attention to the rent then due. Having received no response to either of his letters, he wrote again on January 26, notifying the lessee that if the rent were not paid by February 1, 1933, he would declare the lease null and void and take possession of the ground and contents on that date. The lessee failed to respond to this letter, and on February 1, appellee entered into possession of the property in accordance with the terms of forfeiture contained in the lease. He continued the cultivation of the peony roots, expending $711 in their care and marketing. When the time came to harvest the crop, he cut the blossoms, which he sold for $1,111.

On February 2, 1933, the lessee filed a voluntary petition in bankruptcy in the District Court of the Illinois district of its residence. On February 24, appellant was appointed trustee. On April 11, 1933, appellant tendered to appellee $150 in payment of the rent which had become due of January 1, for the year 1933. On May 22, 1933, appellant tendered the sum of $6.16 to pay the taxes which the lessee had been obligated to pay under the terms of the lease. Appellee refused to accept either tender on the ground that there was nothing due under the lease as a result of the forfeiture. All the personal property belonging to the lessee was subsequently removed from the premises by the appellant.

April 22, 1933, appellant filed his bill in equity stating that the value of the unexpired term was at least $4,000, and asking the court to decree that the lease was still in force, and order the lessor to deliver possession of the premises to appellant and to account for the proceeds from the sale of any peonies which he might have cut from the premises during the period of his possession. The bill was dismissed for want of equity.

Appellant bases his right to relief principally upon the doctrine that equity will not permit the forfeiture of a lease merely for breach of the covenant to pay rent, citing the line of cases following Sheets v. Selden, 7 Wall. 416, 421, 19 L. Ed. 166, and Kann v. King, 204 U. S. 43, 27 S. Ct. 213, 51 L. Ed. 360. While the court in each of those cases held that, under the circumstances of the particular case, the forfeiture was permissible, both laid down the doctrine here relied upon, and both have been cited in numerous cases since that time. The former case was an action in equity to enjoin the execution of a judgment in ejectment. The court stated:

"Both courts of law and of equity have power to give relief in cases of this kind. Courts of law give it upon motion, which may be made before or after judgment. *If after judgment, it must be made before the execution is executed.* The rent due, with interest and costs, must be paid. Upon this being done, a final stay of proceedings is ordered. * * *

"Courts of equity are governed by the same rules in the exercise of this jurisdiction as courts of law. * * * If there be no special reason to the contrary, an injunction thereupon goes *to restrain further steps to enforce the forfeiture.*" (Our italics.)

It will be noted that, in the foregoing quotation, it is expressly stated that the lessee must bring his action for relief before the judgment in the ejectment action is executed. We take this to mean that the Supreme Court

was not laying down the rule that a lessee was entitled to *redeem* premises upon which a forfeiture had already been declared and put into effect. However, Pomeroy, in his work on Equity Jurisprudence (2d Ed.) vol. I, § 453, states the rule as follows:

"Where a lease contains a condition that the lessor may re-enter and put an end to the lessee's estate, or even that the lease shall be void, upon the lessee's failure to pay the rent at the time specified, it is well settled that a court of equity will relieve the lessee and set aside a forfeiture incurred by his breach of the condition, whether the lessor has or has not entered and dispossessed the tenant. This rule is based upon the notion that such condition and forfeiture are intended merely as a security for the payment of money."

He cites a number of cases in support of this proposition, including five American ones.[1] While these cases do broadly state the proposition, only one of them appears actually to grant the relief after a re-entry. See Sanborn v. Woodman, 5 Cush. (Mass.) 36. In fact, this is the only case we have been able to find in which a lessee was restored to possession of leased premises after being ousted by his lessor upon a forfeiture. However, even if the earlier cases had permitted a restoration of possession, we think the practice would be changed by the statutes passed by many states providing for a termination of a lease on nonpayment of rent and for a right of re-entry without notice to quit if the lease provides for payment of rent in advance. See Illinois Merchants' Trust Company v. Harvey, 335 Ill. 284, 167 N. E. 69, contra. Such statutes provide for what might be termed a "conditional forfeiture" against which the tenant may secure relief by payment or tender of the rent any time or place within a certain limited period.[2] It seems to us that the provision for the extended period during which the rent may be paid constitutes the sole relief intended by the statutes and should be considered sufficient safeguard for the rights of the tenant in the absence of special circumstances which it would

be the duty of the court to consider as presented in defense of an action under the statute.

It may be urged that in the case at bar the lessee had no opportunity to present his defense because the lessor re-entered without bringing any action. This simply means that the lessee surrendered his possession to the lessor without the necessity of his bringing the action. There is nothing in the record to indicate that there was any protest on the part of the lessee to the entry of the lessor, or that any action whatever was taken on behalf of the lessee until the tender by the trustee in bankruptcy of the rent which had been due on January 1, on April 11. Under these circumstances we think that the lessor was not bound to stand by and wait to see what action might be taken by the lessee or some one acting in his behalf, particularly in view of the fact that he had received no response to his three letters demanding the rent. Having entered the premises legally, he was entitled to go on and take charge of the crop that had been planted there and cultivate it and harvest it as he did.

Appellant also assigns as error the action of the court in requiring him to give a cost bond for his appeal, arguing that section 25b of the Bankruptcy Act, permits a trustee to appeal without bond. That section, however, does not appear to extend to the situation where a trustee is bringing a plenary suit, and we think it applies only to the types of cases provided for in section 25a, 11 USCA § 48 (a) and (b). While we have found no case precisely in point as to this matter, the question of the liability of the trustee to give bond for costs in instituting plenary proceedings was discussed in the cases of In re Barrett (D. C.) 132 F. 362, and Osborne v. Pennsylvania Railroad Company (C. C.) 159 F. 301. The decisions of those cases turned on the question as to the good faith and reasonableness of the action on the part of the trustee, whether or not he was a resident of the jurisdiction where he brought the action, and whether it appeared that there was a fund available for payment of the costs.

---

[1] Atkins v. Chilson, 11 Metc. (Mass.) 112; Sanborn v. Woodman, 5 Cush. (Mass.) 36; Stone v. Ellis, 9 Cush. (Mass.) 95; Palmer v. Ford, 70 Ill. 369; Sunday Lake Min. Co. v. Wakefield, 72 Wis. 204, 39 N. W. 136.

[2] Burns' Ann. St. Ind. 1926, § 9543: "If a tenant refuses or neglects to pay rent due, ten days' notice to quit shall determine (terminate) the lease, when not otherwise provided therein or agreed to by the parties, unless such rent be paid at the expiration of said ten days."

Section 9545: "Where the landlord agrees with the tenant to rent the premises to him for a specified period of time * * * or where, by the express terms of the contract, the rent is to be paid in advance, and the tenant has entered and refuses or neglects to pay the rent * * * no notice to quit shall be necessary."

See also Platt v. Adriance (C. C.) 90 F. 772. It seems to us that these discussions illustrate the necessity of limiting the effect of section 25b to the cases provided for in section 25a, 11 USCA § 48 (a, b). Where, as in this case, the action is brought in a different district from that of the original bankruptcy proceedings, and the record is not before us to determine whether or not there are any assets out of which the costs can be paid, we think the court did not err in requiring the trustee to give bond for their payment.

Decree affirmed.