## ESCHER v. HARRISON SECURITIES CO. et al. (SPINKS REALTY CO. et al., Interveners).

### No. 7236.

Circuit Court of Appeals, Ninth Circuit.

Oct. 15, 1935.

Barker & Keithly, Barker, Smiley & Keithly, and Donald Barker, all of Los Angeles, Cal., for appellant.

O'Melveny, Tuller & Myers and Pierce Works, and J. W. Chance, all of Los Angeles, Cal., for appellee Roberts.

Fredericks & Fredericks and John D. Fredericks, Jr., all of Los Angeles, Cal., for appellee Rivers.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from an order denying appellant's petition as intervening lessor for an order (1) terminating the receivership in the suit instituted by the plaintiff, Myrtle R. Escher, respecting the lessor's Pershing Square building and property in the city of Los Angeles, and (2) allowing appellant to enforce its rights as such lessor arising from admitted long-standing defaults in the lease legally warranting repossession.

Appellant, Spinks Realty Company, intervener, is lessor of the ground and improvements thereon known as the Pershing Square building situated at the northeast corner of Fifth and Hill streets in the city of Los Angeles. Appellee, plaintiff Myrtle R. Escher, is an unsecured creditor of defendant. Appellee, defendant Harrison Se-

curities Company, is lessee of the property above mentioned. Appellee Ernest Roberts, defendant in intervention, is trustee under a certain indenture securing a bonded indebtedness of Fifth and Hill Building Company through means of which bonded indebtedness said improvements were constructed. Appellee Henry E. Rivers is receiver of defendant appointed by the court below in the suit instituted by the plaintiff.

The principal considerations appearing in the lease were the erection of a thirteen-story building on the land and a monthly rental of $7,500. There is no evidence of the value of the land at the time of the execution of the lease and no evidence of or method of determining how much higher the rental would have been if the lessee had not agreed that the building would become at once the property of the lessor upon its creation and also had not specifically agreed that it should be subject to the forfeiture provisions of the lease. Each of the parties to the appeal acquired his interest in or claim upon the receivership with notice of the following agreement concerning that portion of the consideration for the lease represented by the building:

"Ownership of Building.

"16. Any and every building constructed on said leased premises by the lessees as hereinbefore provided shall remain on said premises and shall be and remain the absolute property of the lessor, without cost to it, upon any termination of this lease, whether by lapse of time or by forfeiture or otherwise. Nothing in this section or in the section of this lease entitled 'Forfeiture for Default,' or elsewhere in this lease, shall be construed as placing the title of any buildings or improvements constructed on said premises in the lessees; but the said buildings and improvements shall always be a part of the land, and the title to the same and every part thereof shall at all times be in the lessor, subject only to the leasehold interest of the lessees."

So far as the claimed equities of creditors or bondholders are concerned, the position of such appellees is the same as if a $1,000,000 premium had been paid for the lease; and, so far as the lessee is concerned, its claimed equity does not differ from that of a merchant lessee who, through default in rent, is threatened with the loss of a good will worth $1,000,000, based upon an advantageous business location. So far as the lessor is concerned, the extreme claim of appellees is the same as where a forfeiture of lease would enable a lessor at some future time to secure a new lease at a better rental, the record here demonstrating that, even with the building, the property for eighteen months has yielded very much less than $7,500 per month above the taxes agreed to be paid by the lessee. These analogies are suggested (a) in view of the claim of appellees that a court in restoring its property to the lessor, after months of default in the rent and in other forfeiting breaches of the contract, with no tender of the rent or provision for its payment, or curing of the other defaults in any reasonable time, would violate some equity on some theory of unjust enrichment; and (b) in view of appellant's position that its bargain was a clear one to all the present litigants, that it has waited eighteen months for its rental, and that even with the repossession of the building such repossession has not been shown to create an unjust enrichment over the values when the bargain was made.

A bond issue, provided for in the lease, secured by lessee's transfer of its interest, was created, and $1,030,000 in bonds were issued and outstanding at the commencement of the suit.

The lessee became insolvent and, on the suit of a single unsecured creditor, consented to the appointment of a receiver. The usual injunction was issued restraining, inter alios, the lessor from taking any action against the receiver or the lessee for the repossession of the leased property. The bondholders intervened through their trustee, alleged default in payment of installments of principal, interest, and breaches of covenants to pay taxes and insurance premiums, and claimed possession of and right to administer the property under a usual trust indenture provision.

After the receiver had had ten months' administration of the property, on October 17, 1932, appellant intervened and sought to modify the injunction restraining it by asking permission to make the demands on the receiver and lessee necessary to establish its rights under the lease and to commence proceedings in the California courts, or the court below, to recover possession of the property because of default in the rental, taxpaying, and insurance covenants of the lease, and to make the receiver a party to the action. Order to show cause was issued, hearing had and, on December 12, 1932, the court denied the lessor the exer-

cise of its right to recover possession. Lessor renewed its application.

On May 8, 1933, at the hearing of the second order to show cause why the permission should not be granted, it appeared that the rent was $82,500 in arrears; that no rent had been paid in full for twelve months; that unpaid insurance amounted to $7,184.28; that the taxes were in arrears $15,000; that $5,000 taxes had been paid from a loan from the lessor; that there was a supply of building space for rent in buildings in Los Angeles competing with lessor's greatly in excess of demand, and hence no immediate prospect of an increase of rentals from the subtenants or decrease in vacancies in the building sufficient to discharge the current obligations of the lease, much less the lease arrearages on the bond obligations: and, substantially, that the only hope of an increase in assets of the receiver's estate to meet the obligations of the lease was the recovery of Los Angeles from a long real estate slump, heightened by the economic depression of the United States since 1929.

No testimony as to the value of the lease to the lessee or the receiver was offered; the statement of a balance sheet of a prior receiver, based upon some other balance sheet not appearing, of a value of $464,590 not being supported by any evidence. The claim of the brief of the bond trustee that the evidence shows such a value in the lessee or in the receiver must have been made with "tongue in cheek." The trustee asserts his right to possess and administer the lease, that is, the only asset in the receiver's estate, because of defaults sufficient to warrant demand of payment of the remaining principal. In March, 1933, these defaults amounted to $198,293.50, interest, installments of principal, and, approximately, $7,000 insurance. By August of the succeeding year 1934, through which period the search for a purchaser for a lease might well continue, the obligations would amount to at least $74,000 more.

In May, 1933, the unpaid rent and taxes were $82,500 and $15,000, respectively. The accrual of rental from May, 1933, to August 1, 1934, is $112,500. The lowest estimate of operating costs and taxes, exclusive of rental, is $71,120 per annum; extended to that date it is approximately $94,800.

The above items total as of August 1, 1934, $584,093.50. Against this total the receiver hopes to collect rentals to that date of $256,000. The net arrearage is $328,093.50; that is to say, the receiver must get from the purchaser $328,093.50 to re-establish the trust of the lease and the lease itself and, says the bond trustee, the purchaser will pay $440,636 more or in all $768,729.50 to secure a lease having bonds still outstanding against it of $827,000. It is needless to say that such an argument to a federal appellate court by the bond trustee seeking to end the receivership, by taking from it its only asset, because the income from the subtenants of the lease is so small, does not appeal. Its flavor is not bettered by the fact that the committee for the bondholders, though having at stake this alleged enormous value, announces that it cannot raise enough to pay the balance between the collections from the subtenants and the $7,500 per month.

The District Court, without finding of fact or opinion, made its order denying the second petition of the lessor appellant to modify the injunction and permit lessor to make the statutory and lease provision demands on the receiver and lessee for the establishment of its right under the lease and sue in the state court or the court below. The order reserved to the lessor the right to make a third application. Appeal here followed:

Appellant's position is (1) that, in the absence of any tender of the arrearages of rent or offer presently to perform the other broken covenants of the lease, its right to proceed at once to take steps by demand and, if necessary, by litigation for possession of its property, is fully created; (2) that the only equity in the lessee or the receiver and the subordinate secured and unsecured creditors, where, as here, the lessor is seeking a judicial determination of its lease, is to have its forfeiture prevented by a tender of the rent and performance of other broken covenants prior to the final judicial or other restoration of the property to the lessor; and hence (3) that the court erred in denying it permission to initiate proceedings by demand or litigation, based on its legal right to seek repossession—an error equally or more grave than a refusal to allow, on default, the initiation of a proceeding to foreclose a mortgage or lien on property in a receivership estate.

The contention of the appellees, in final analysis, is (1) that the right to repossession is a mere "security for the payment of the rent" and the performance of other lease covenants which are defaulting in

character if not performed, and that, although the rent is unpaid and other covenants not performed, the lessor may be restrained from taking any action or prosecuting proceedings to recover its property so long as it is shown that the consideration for the lease, other than the fixed rental portion thereof—here the building—has a value to the landlord more than the amount of the arrearages of rent and damages from other defaulted covenants, since otherwise the landlord would be "unjustly enriched"; (2) that, in determining the existence of this claimed unjust enrichment, the value of this other consideration for the lease shall not be determined with a view to the present value of the property, after eighteen months' proved inability to pay the rent or cure the defaults, but the court is entitled to withhold lessor's proceedings to recover the property until the court has decided the time of continuance of a drop in Los Angeles real estate values, caused or heightened by a general economic depression, already of three years' existence, and of unknown further continuance; (3) that the lessor should be restrained until the resolving by the court of the uncertainty as to the lessee's ability to pay, expressed in the brief of the receiver, speaking as an officer of the court, as follows:

"That concerning said Pershing Square Building there has not as yet been a fair opportunity to determine whether or not it is possible, under efficient and economic management and even with the prevailing high ground rental, to operate said property so that the same will pay its operating costs and ground rental and some return to the bondholders whose funds erected and constructed said building and, as this appellee understands, the order appealed from only deferred the exercise of appellant's legal right of forfeiture pending a time when it may be determined either that said building may be successfully operated or it be conclusively determined that it is impossible to do so."

Consent receiverships such as this, the Supreme Court says, are "watched with jealous eyes lest their function be perverted."

"This court has had occasion to point out the abuses that can arise from friendly receiverships forestalling the normal process of administration in bankruptcy and enabling a tottering business to continue while creditors are held at bay. Harkin v. Brundage, 276 U. S. 36, 52, 54, 48 S. Ct. 268, 72 L. Ed. 457; cf. Kingsport Press v. Brief English Systems (C. C. A.) 54 F. (2d) 497, 499, 500. Receiverships for conservation have at times a legitimate function, but they are to be watched with jealous eyes lest their function be perverted". Michigan, by Haggerty v. Michigan Trust Co., 286 U. S. 334, 345, 52 S. Ct. 512, 515, 76 L. Ed. 1136.

Whatever may have been the formally declared purposes in initiating the receivership, its paramount purpose at the time the lessor intervened was to prevent its assertion of its legal right to repossess its property—the only asset in the receivership estate. So far as concerns the lease, the receivership proceeding is no more than a bill to restrain the assertion of this legal right.

(1) *Landlord's right to repossess for failure to pay rent and nonperformance of other forfeiting covenants as a "security for the rents."* The bond trustee asserts this doctrine of the right to repossess as a security for the rent is properly stated by Pomeroy as follows:

"Pomeroy's Equity Jurisprudence, § 453, says: 'Where a lease contains a condition that the lessor may reenter and put an end to the lessee's estate, or even that the lease shall be void, upon the lessee's failure to pay the rent at the time specified, it is well settled that a Court of Equity will relieve the lessee and set aside a forfeiture incurred by his breach of the condition, whether the lessor has or has not entered and dispossessed the tenant. This rule is based upon the notion that such condition and forfeiture are intended merely as a security for the payment of money.' "

The bond trustee's brief, however, fails to mention or consider the Supreme Court case of Sheets v. Selden, 7 Wall. 416, 422, 19 L. Ed. 166, first enunciating the doctrine cited by Pomeroy under the quoted section, or any of six Circuit Court of Appeals cases expressly relying on the doctrine of that decision. Davis v. Taylor, 51 App. D. C. 97, 276 F. 619, 622; Bonfils v. Ledoux (C. C. A. 8th) 266 F. 507, 510; Peirce v. N. Y. Dock Co. (C. C. A. 2d) 265 F. 148, 156; Saks v. B. H. Stinemetz & Son Co., 54 App. D. C. 38, 293 F. 1005, 1009; Robertson v. Langdon (C. C. A. 7th) 72 F. (2d) 148, 149; Empress Theatre Co. v. Horton (C. C. A. 8th) 266 F. 657, 662. It seems to have been composed on the cockpit theory that briefs are spurs to undercut the oppos-

ing bird rather than to advise a court, known to be laboring under the excessive litigation of a community which has outgrown the number of its judges.

In Sheets v. Selden, 7 Wall. 416, 19 L. Ed. 166, the lease provided that all the rights and privileges of the lessee should cease and determine if any rent should remain unpaid for one month from the time it became due, and the lessor was given the right to enter and take possession of the premises. The tenant having defaulted and having refused to yield possession, an ejectment was brought against him and judgment for possession was rendered in favor of the lessor. Some time thereafter the tenant brought a suit in equity to restrain the enforcement of the judgment in the ejectment suit, but failed to tender payment of the amount found by the court necessary to make good the deficiency in rentals. The court held that in not alleging in his bill a tender of this amount the bill was fatally defective.

"Courts of equity are governed by the same rules in the exercise of this jurisdiction as courts of law. All arrears of rent, interest, and costs must be paid or tendered. If there be no special reason to the contrary, an injunction thereupon goes to restrain further steps to enforce the forfeiture. The grounds upon which a court of equity proceeds are, that the rent is the object of the parties, and the forfeiture only an incident intended to secure its payment; that the measure of damages is fixed and certain, and that when the principal and interest are paid the compensation is complete." Sheets v. Selden, 7 Wall. 416, 421, 422, 19 L. Ed. 166.

The principle thus laid down is again approved by the Supreme Court in Prout v. Roby, 15 Wall. 471, 477, 21 L. Ed. 58, and in Kann v. King, 204 U. S. 43, 54, 27 S. Ct. 213, 51 L. Ed. 360. As established in these cases, the tender of the rent, interest, and costs may be made before or after judgment but, if after judgment, it must be made "before the execution is executed."

We can find no case in which the Circuit Court of Appeals has varied from the principles established in these cases. In the following cases relief was denied because of failure to make a tender of rent or because the breach was of a character not susceptible of money valuation, such as the violation of a covenant to comply with municipal regulations. Peirce v. N. Y. Dock Co. (C. C. A. 2d) 265 F. 148, 156; Bonfils v. Ledoux (C. C. A. 8th) 266 F. 507, 510, where no tender of accrued rent was made; Saks v. B. H. Stinemetz & Son Co., 54 App. D. C. 38, 293 F. 1005, 1009, where right of re-entry was predicated upon breach of a forfeiting covenant against bankruptcy or receivership of lessee, and the court held that, compensation for the breach not being capable of definite pecuniary ascertainment, as in the case of rent, equitable relief would be denied. See, also, Empress Theatre Co. v. Horton (C. C. A. 8th) 266 F. 657, 662.

In the following the relief was granted where the tender was made in proper time: Davis v. Taylor, 51 App. D. C. 97, 276 F. 619, 622, where the court said "Of course, the tender must be kept good, as it is here."

In the case of Odell v. H. Batterman Co. (C. C. A. 2d) 223 F. 292, the leased property had come into the possession of the lessee's receivers. The lessor sought permission to litigate in a state court his right of re-entry for breach of a defaulting covenant to pay rent. The District Court (217 F. 305) denied the lessor this right, and it was contended that the order as made merely postponed the right of the lessor to maintain his litigation for repossession. The Circuit Court of Appeals held that the right was to an "immediate" suit to determine lessor's claims and that the lower court erred in failing either to permit the suit to be brought in the state court or to entertain the lessor's claim as an ancillary proceeding in the receivership. In reversing it gave leave to commence and prosecute the action in the Supreme Court of the state of New York as prayed for by the lessor. In the course of the opinion the court holds that the lessor has the same right to an immediate determination of his claim of right to re-entry as has a mortgagee to prosecute his foreclosure.

"A trustee in bankruptcy gets the title of the bankrupt, and a chancery receiver, as we pointed out in Durand & Co. v. Howard & Co., 216 F. 585, 591, 132 C. C. A. 589 [L. R. A. 1915B, 998] (1914), takes no title, but simply the possession as an officer of the court. It does not, however follow that the receiver can retain possession as receiver of A.'s property when it appears that A.'s right in the property is gone and that B. is entitled thereto. There can be no reason why B. is not entitled to show that A. has lost his right to the possession of the property, and that he (B.) is entitled to enjoy it. In other words, a chancery re-

ceiver can have no better right to retain possession of a leasehold than a trustee in bankruptcy has. The landlord's right to enforce a forfeiture of the lease is not less when a chancery receiver is in possession than it is when a trustee in bankruptcy has possession.

"In this case the alleged breach of the lease occurred more than seven weeks before the appointment of the receivers. The landlord's right to end the tenancy was therefore complete, if the allegations are supported by the facts, before the receivers came into possession of the property. The receivers have no greater rights in the property than the insolvent corporation itself possessed. The appointment of the receivers in no wise abrogated the contract. And if under the lease after breach the landlord is entitled upon giving proper notice to the immediate possession of the property as against the tenant he certainly must have the same right as against the receivers. Receivers are not appointed to keep persons out of their rights. The law does not tolerate so rank an injustice." Odell v. H. Batterman Co. (C. C. A.) 223 F. 292, 296, 297.

We consider the decision in this case peculiarly applicable to the case at bar.

■ In the case of In re Hool Realty Co. (C. C. A. 7th) 2 F.(2d) 334, the lessor sought in a receivership proceeding to have the lease declared forfeited because of the nonpayment of rent. The court found that the lessor had in his possession sufficient funds of the lessee to pay the defaulted amount and denied the forfeiture of the lease. In that case, as in the case before us, it appeared that valuable improvements had been made to the leased property and the court found that these improvements increased the value of the property of which the lessor sought repossession. It speaks of this fact as being "most persuasive," but does not indicate of what the fact is persuasive, and the case certainly does not hold that the recovery by the lessor of a property more valuable than at the day it was leased is a ground for refusing to consider the lessor's claim of a right to re-entry based upon a default in the payment of rent. It is our opinion that in all cases of forfeiture the court should jealously regard the legal and equitable rights of all parties, but this does not mean that we can rewrite the lease with new legal provisions or create equitable rights allowing an indefinite postponement of the legal right of repossession, without provision for payment of the defaulted rental. In this respect we see no difference between refusing the lessor his right to litigate claims to immediate repossession and the denial to a mortgagee of his right to commence foreclosure proceedings upon the mortgagor's default.

■ However, even if hardship to the lessee or advantage to the lessor could be the foundation of an equitable defense, an assertion of such hardship or advantage must be viewed with reference to the conditions prevailing at the time of the execution of the lease. The consideration for the lease, that a valuable building must be erected by a tenant, may well have caused a lower rental. Nothing definite concerning the conditions then existing as affecting the nature of the bargain, as a good or bad one for either of the parties, appears in the record. It may well be that, if the building had not been a part of the consideration, another lease contemplating a smaller and less permanent improvement would have been made to a tenant able to remain solvent at a much larger rental of, say, $12,500 per month. So far as the proofs are concerned, the drop in real estate values in general, and the competition of the excess supply of office buildings may have caused the present combined value of the land and new building to be less than that of the land and older building on it when the lease was made. Hence, assuming that unjust enrichment of the lessor were in issue, with the burden upon the party offering against lessor's admitted legal right to prove facts showing affirmatively such an equitable defense, the absence of such proof compels our finding that the lessor will not be unjustly enriched by repossession.

■■ Nor can we discern any merit in the contention that, because there exists a deep financial and economic depression, judicially recognized as affecting all interests in the community, the lessor, as likely as any one to be faced with the financial embarrassment of the times, and as likely to be in immediate need of its resources in money and property, should be deprived either of the immediate right to its rentals or to its property. So far as the depression is concerned, this court has no right to assume that its effects lie any less heavily on the lessor than on the lessee.

Concerning the effects of a depression as justifiable grounds of preventing a lien-holder from asserting his rights, the Circuit

Court of Appeals for the Second Circuit has held that, although the foreclosure of a first mortgage on premises held by a receiver will, because of general financial distress, preclude any hope of enough being realized to pay more than the amount of the mortgage so secured, the first mortgagee cannot, for that reason, be denied the right to commence foreclosure proceedings even if denial, continued for "two or three years," will bring the property to a value sufficient to pay junior encumbrances. Judge Lacombe's opinion holds: "But, although a court of equity will be astute to protect all equitable interests, there is a limit beyond which it may not go. In the case of successive mortgages upon a single piece of real estate, it may often be a great hardship to the holder of a junior mortgage to have the property sold under foreclosure of the first mortgage at a time when general financial distress will preclude any hope of enough being realized to pay more than the amount secured under the first mortgage, while, if all action could be suspended for two or three years, the property would sell for a price sufficient to pay both mortgages in full. But there is no power in a court of equity to abrogate the right of foreclosure and sale for which the first creditor stipulated, which is incorporated in the contract and on the strength of which he lent his money." Gay v. Hudson River Elec. Power Co. (C. C. A.) 184 F. 689, 693, 694.

Hardship on the mortgagor does not seem a ground for transferring the burden to the mortgagee, of whom it may well be presumed that in times of financial hardship his funds may be as necessary to him as the mortgagor's equity is to the latter. Judge Lacombe's opinion goes on to say that, even if the mortgagee is better off by the transaction than the mortgagor, this does not change either the legal or equitable rule applying.

"So, in the case at bar, it may be 'selfish' for these bondholders to insist upon a present sale of the property, at a time when junior incumbrancers and unsecured creditors deeply interested financially are 'so tied up by this litigation that it is impossible for them to protect themselves.' It may be a 'grievous wrong' to them to permit such sales; but, if it is the clear right of the mortgagee to have such a sale go on, the court may not deny him his right, however great may be the hardship to others. Nor must it be forgotten that these others gave credit with full knowledge; the mortgage with its two paragraphs was on file advising them of the situation of the debtor at the time they trusted it." Gay v. Hudson River Elec. Power Co., supra (C. C. A.) 184 F. 689, 694.

The court certainly has no more right to alter the obligations of a contract because of an economic depression than has the Congress. See Louisville Joint Stock Land Bank v. Radford, 295 U. S. 555, 55 S. Ct. 854, 79 L. Ed. 1593, 97 A. L. R. 1106.

In the recent case of Robertson v. Langdon (C. C. A. 7th) 72 F.(2d) 148, 149, the doctrine of Sheets v. Selden, 7 Wall. 416, 19 L. Ed. 166, is reaffirmed and the dismissal of a bill by the lessee's trustee in bankruptcy for want of equity where it appeared that there had been no tender of the defaulted rent until after the lessor had repossessed the property was sustained. In that case the defaulted rent amounted to $150; the value of the unexpired term of the leasehold lost was $4,000—that is to say, the lessee's alleged loss relative to the rental due exceeded in proportion that of the case at bar. In addition, the landlord on repossessing had made a profit from the crop planted by the lessee. Neither fact caused an enlargement of the equitable rights of the lessee. The court considers certain nisi prius cases in which the restoration of the premises has been ordered on a tender of rent after the lessor is finally repossessed, but nevertheless adheres to the doctrine of Sheets v. Selden, supra, that the lessee's equity is lost where the premises are restored to the lessor.

Appellees have cited a number of state court cases from which selected language appears to suggest a greater equitable power than that established in the federal cases. An analysis of these state opinions shows that in but one has it been held that the lessor will be denied his right to initiate proceedings for repossession, in the absence of a provision for making good to him the defaulted rentals. As to the single exception, the rule established is not applicable here.

In the case of Parr v. Blue Ridge Coal Company, 72 W. Va. 174, 77 S. E. 894, 897, a receiver of the lessee moved the court to dissolve an injunction restraining him and his wife from declaring a forfeiture of the lease. The court denied the motion saying: "If there was right of forfeiture and re-entry, the remedy of appellants, we think, was not by way of motion to dissolve the

injunction but by application to the court below to require the receiver to yield possession of the property." This is not a holding that unjust enrichment is a ground for denying or postponing lessor's right to repossession. There is a dictum in the case that the interests of other creditors subordinate to the lease give the receiver a better right to resist the provisions of the lease for re-entry on nonpayment of rent than the lessee, which is clearly contra to the federal cases.

In Fleming v. Fleming Hotel Co., 69 N. J. Eq. 715, 61 A. 157, 158, 159, the court apparently holds that the receiver has a higher equitable right to resist the legal claim of the lessor than exists in the lessee. In that case the lessor applied to the court for an order requiring the receiver to surrender the property to him. The Vice Chancellor held that the lessor "should not be allowed to forfeit this lease upon the first ground stated [i. e. non-payment of rent] until it shall appear that the receiver is unable or unwilling to pay the accrued rent—a condition not likely to exist, in view of the amount of property in the receiver's hands applicable to this purpose. * * * It is the duty of the receiver to act with all reasonable promptness, and he should dispose of this property, including the leasehold interest, without unnecessary delay, and satisfy the petitioner for the rent due to him."

In so far as the New Jersey Vice Chancellor's opinion asserts that receivership, merely because of a multiplicity of creditors, creates an equitable right beyond that recognized in the federal cases above cited, it cannot control this case. It should be noted, however, that the rule stated supports the decision in the case before us since it appears here "that the receiver is unable * * * to pay the accrued rent."

In all the other New Jersey cases cited in which injunctive relief was granted, there had been either tender of performance after breach, substantial performance of the condition, or waiver of breach by equitable conduct by the lessor warranting the prevention of the forfeiture. However, in Bergman v. Fortescue, 74 N. J. 266, 69 A. 474, foreclosure of a mortgage was decreed because of the breach of a covenant to pay taxes, thus following the dictum in Sheets v. Selden, 7 Wall. 416, 421; 19 L. Ed. 166. In Blake & Co. v. Smidth (N. J. Ch.) 119 A. 306, 307, and Gunning v. Sorg, 214 Ill. 616, 73 N. E. 870, the granting of an injunction restraining forfeiture was conditioned on the tender of the full rent, in one within ten days and the other within seven days; that is to say, that relief will be granted only if payment is promptly made. If allowing these two short periods before the lessor can take action establishes a principle of extended control by equity over the lessor until uncertainties as to payment are resolved, these two cases are not in accord with the federal decisions.

 We therefore hold that the District Court should have granted appellant's petition to be permitted either in the receivership proceeding or in the state court to take action arising from the lessee's defaults. In the event that the court decides to entertain appellant's claim for repossession, appellant should be accorded substantially the rights created by the provisions of the California Codes in contemplation of which the lease of the premises was executed.

Death and two vacant judgeships have caused a delay in deciding this appeal. We are not advised as to the present condition of the property. The receiver may have time and be able, possibly by negotiation, to arrange to cure the defaults, and something may be saved for the creditors. We hence affirm that portion of the order appealed from which denies the prayer for termination of the receivership. Otherwise the order is reversed.